THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PHILIP GREER, Appellant.

Fourth Department, November 6, 1975

*Nathaniel A. Barrell (Rosalie M. Stoll* of counsel), for appellant.

*Edward C. Cosgrove, District Attorney (John Defranks* of counsel), for respondent.

WITMER, J. The principal question presented for review on this appeal is whether the court erred in denying defendant's request that it charge the jury that they could find him guilty of coercion in the second degree as a lesser included crime of rape in the first degree. We conclude that upon the facts in this case the court should have so charged.

In July, 1974 complainant was 26 years old, employed and residing in an apartment in the City of Buffalo. After work on the 26th she went to her parents' home for dinner. Thereafter she played softball until about 9:00 P.M. and then visited a girlfriend. They went to a bar for an hour and a half and drank two "screwdrivers", and then went to another bar and had four more "screwdrivers". At about 1:30 A.M. she drove to her apartment alone, parked her automobile in the street in front of it, and fell asleep therein.

Between 2:00 and 3:00 A.M. defendant, a black, was walking on that street and saw complainant in her car. He opened the door, awakened her and asked her if she was all right, and she replied affirmatively. He told her that he was walking home to a distant part of Buffalo and she, in appreciation for his thoughtfulness, offered him a ride. He was a complete stranger to her, but she permitted him to drive the car. He first drove to the home of a friend whom he wished to see, and got out of the car. Complainant then got in the driver's seat and when he returned, reporting that his friend was not home, he gave her directions as to where to drive. He had her make many turns so that she did not know where she was, and she testified that she became scared. She thought that he acted strangely. When they were in a commercial area he asked her to stop the car, and she did. Complainant testified

that when defendant started to get out of the car, she attempted to drive away. He immediately grabbed the key and put the car in parking gear. When he then got out of the car she tried to lock the door but he grabbed it and got back in the car. She beeped the horn and he grabbed her arm and twisted it and dragged her out of the car. She resisted and screamed and he said, "Don't make me mad", and he put his hand over her mouth and on her throat. He said, "Do you know Mosely? I'm Mosely". Complainant knew that Mosely had been connected with a rape and murder. Defendant dragged her to a truck loading dock 40 or 50 feet away where it was dark, and he threw her to the ground and started to undress her. She kept pushing him away. He took off his and her pants, and with no further resistance on her part he had sexual intercourse with her for about 10 minutes. At about 4:00 A.M. the lights of an approaching automobile appeared on the street, and defendant said, "Be quiet, it's the cops". Complainant then called out, "Help me, help me". An officer with a flashlight came to the spot where they lay, and he found defendant still on top of complainant, and both of them naked from the waist down.

Complainant asserts that she did not resist defendant more and did not scratch him because he was large and she could not overpower him, and she was afraid for her life. She denied that she encouraged defendant in any way to make advances to her. She testified that except for twisting her arm and holding her so that she could not run away defendant did not strike her or treat her with violence. Because of fear for what he might do to her, after leaving the car she did no more than push him away, and after he had her pants off she made no resistance.

Complainant was taken to the hospital and examined. She did not complain of any injury, and told the doctor that she was all right. She also told him that she had been on and off birth control pills for three years.

The officer testified that when he arrived at the scene with gun in hand and turned the lights on the couple, defendant got up. The officer said, "What's going on here?", and defendant replied, "This is my woman". The officer asked him her name and he admitted that he did not know. The officer said that complainant was crying and was covered with dirt.

Defendant testified that he was 21 years old, 5 feet 10 1/2 inches tall and weighed 238 pounds. On the night in question

at about 2:50 A.M. he was walking home and saw complainant sitting in her car; he recognized her and believed that her name was "Annie". He asked her why she was sitting there and she said that she was waiting for someone; and she invited him to get in the car, which he did. They talked awhile, and he asked her to drive him home and she agreed; but he drove at first and then she drove. He testified that she passed two police stations en route and did not drive toward his home. She stopped on Indiana Street and said that she wanted to talk about her boyfriend with whom she had had an argument. After talking awhile he got out of the car to urinate and on returning, complainant was standing outside of the car, and they began to make love and kiss. They then walked to the loading dock area where he laid his jacket on the ground for her to lie on, and they were having sexual intercourse when the police arrived.

Defendant testified that he had known complainant for some time, having met her at a bar, and that he had had sexual intercourse with her on two prior occasions. He denied telling her that he was Mosely.

Defendant was indicted for rape in the first degree. On the above facts the question is whether defendant was entitled to a charge that the jury could find him guilty of coercion in the second degree, as a lesser included offense.

"A male is guilty of rape in the first degree when he engages in sexual intercourse with a female: 1. By forcible compulsion" (Penal Law, § 130.35, subd 1). In subdivision 8 of section 130.00 of the Penal Law, "Forcible compulsion" is defined as "physical force that overcomes earnest resistance; *or a threat,* express or implied, that places a person in *fear of* immediate death or *serious physical injury* to himself or another person, or in fear that he or another person will immediately be kidnapped" (emphasis supplied).

In contrast to the latter part of the definition of forcible compulsion, coercion in the second degree is defined as follows (Penal Law, § 135.60, subd 1), "A person is guilty of coercion in the second degree when he compels or induces a person to engage in conduct which the latter has a legal right to abstain from engaging in * * * by means of instilling in him a fear that, if the demand is not complied with, the actor or another will * * * 1. Cause *physical injury* to a person" (emphasis supplied).

"Lesser included offense" is defined in subdivision 37 of CPL

1.20 as follows: "When it is impossible to commit a particular crime without concomitantly committing, by the same conduct, another offense of lesser grade or degree, the latter is, with respect to the former, a 'lesser included offense.' "

It is well settled that "if, upon any view of the facts, a defendant could properly be found guilty of a lesser degree or an included crime, the trial judge must submit such lower offense" *(People v Mussenden,* 308 NY 558, 561–562). Thus, whether defendant was entitled to have the court charge the jury that they could find him guilty of coercion in the second degree depends upon whether, "there is a reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but did not commit the greater" (CPL 300.50, subd 1; see, also, *People v Asan,* 22 NY2d 526, 529–530; *People v Hayes,* 43 AD2d 99, affd 35 NY2d 907).

As above noted, to establish rape in the first degree the prosecution must show that the sexual intercourse was brought about by "forcible compulsion". That forcible compulsion may be shown by proof of actual physical force upon the woman or by proof of threat that placed her in fear of immediate death or *serious physical* injury (Penal Law, § 130.00, subd 8). Here the District Attorney sought to prove the compulsion in both of the ways specified in the latter statute, that is, by defendant's actual use of physical force upon her, and also by his threat that he was Mosely, a person whom complainant knew about as a rapist-murderer.

It is clear that coercion in the second degree is not a lesser offense of the crime of rape in the first degree insofar as it rests on the use of actual physical force upon the woman. It may, however, be a lesser included offense of rape in the first degree which rests upon the claim of use of threat of death or serious physical injury. Upon the evidence in this case the jury could have found that defendant's threat, in view of his use of minimal force, was at most cause for complainant to fear physical injury within the terms of coercion in the second degree, but not *death or serious physical injury* as required to establish forcible compulsion.

To be sure, this distinction may put a great burden on a woman who is under threat of force, to measure its seriousness. But that is the way the statutes are drawn; and it is the jury's function to weigh the evidence and determine whether the threat made in this case was sufficient to warrant com-

plainant ceasing all resistance. She had a right not to have sexual relations with the defendant, of course. The question here is only, whether the *threat* made was sufficient to charge him with forcible compulsion and hence rape in the first degree or with a lesser degree of subjection, amounting to coercion in the second degree, as a result of which complainant consented to sexual intercourse with him.

That was a question of fact for the jury, and the court erred in declining to submit it to them under such a charge. Although no case has come to our attention so holding, the Practice Commentary by Arnold D. Hechtman (Penal Law, § 130.00 [McKinney's Cons Laws of NY, Book 39, 1975, p 449]) supports this view (see, also, Practice Commentary by Denzer and McQuillan [Penal Law, § 130.00 (McKinney's Cons Laws of NY, Book 39, 1967, p 273)]). The court's refusal to give that charge constitutes reversible error *(People v Battle,* 22 NY2d 323; *People v Malave,* 21 NY2d 26).

Defendant also contends that the court erred in permitting the District Attorney, over objection, to prove through the arresting officer that after defendant said, "This is my woman", the officer asked him her name, and defendant admitted that he did not know it. The District Attorney had notified defendant that he would offer evidence that defendant had told the officer that, "This is my woman", but he did not reveal that he intended to prove that the officer had questioned defendant further and that defendant had admitted that he did not know her name. Defendant claims that such admission by him was involuntarily made, was subject to suppression and was inadmissible into evidence.

Subdivision 1 of CPL 710.30 provides in part, "Whenever the people intend to offer at a trial (a) evidence of a statement made by a defendant to a public servant, which statement if involuntarily made would render the evidence thereof suppressible upon motion pursuant to subdivision three of section 710.20 * * * they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered." "[T]he obvious purpose of the statute is to give a defendant adequate time to prepare his case for questioning the voluntariness of a confession or admission" *(People v Ross,* 21 NY2d 258, 262). Thus, the notice of intention to offer evidence need not be served upon the defendant where there is no question of voluntariness (see CPL 710.20, subd 3).

"[A] police officer may stop a person in a public place * * *

when he reasonably suspects that such person is committing * * * (a) a felony or (b) a misdemeanor defined in the penal law, and may demand of him his name, address and an explanation of his conduct" (CPL 140.50, subd 1). It may very well be, as the People contend, that the questioning of the defendant herein by the arresting officer was "during normal police investigative procedure when defendant was neither in custody, nor significantly restrained nor detained" *(People v Felice,* 45 AD2d 1026), in which case the statement is not subject to suppression. *Miranda* warnings are not required "so long as the interrogations of suspects are not conducted while the suspects are in custody" *(People v De Tore,* 34 NY2d 199, 209).

It appears that, after hearing a call for help, the officer approached defendant and complainant in the darkness with his gun drawn. Defendant was not under arrest, of course, the moment the officer arrived, for the officer was trying to find out the situation, but in defendant's position he might well have deemed himself under arrest at that very moment. That subjective thought, however, is not the test, which is "what a reasonable man, innocent of any crime, would have thought had he been in the defendant's position" *(People v Yukl,* 25 NY2d 585, 589). Although the People urge that the officer's question was solely investigatory, still, if that was its purpose, he could have directly asked complainant her name; and the fact that he asked defendant suggests that he was checking defendant's knowledge of the woman and his veracity. In the face of defendant's claim that the statement was involuntarily made, the court should have accorded him a *Huntley* hearing to determine its voluntariness before ruling on its admissibility. In the absence of such hearing, the statement was not admissible.

Defendant also contends that the District Attorney's cross-examination of him as to his prior wrongful acts was in violation of rules of evidence and reversibly prejudicial. The District Attorney asked defendant whether on an occasion five years previously he had entered the apartment of two girls, grabbed some scissors, ripped the blouse off one of the girls and forced both girls into bed. On defendant's denial thereof the District Attorney asked him whether he was not apprehended immediately thereafter and that fresh paint from that apartment was found on his pants. The court overruled defendant's objection but did instruct the jury to disregard the

last question. The questioning about this type of crime in this case was improper for it could serve no purpose but to show a propensity on the part of defendant to commit the sort of crime for which he was on trial. In *People v Reingold* (44 AD2d 191, 195) we reviewed the law in this respect as follows: "A 'defendant who chooses to testify may be cross-examined concerning any immoral, vicious, or criminal acts which have a bearing on his credibility as a witness' *(People v Schwartzman,* 24 NY2d 241, 244). The offenses inquired into on cross-examination need not be similar to the crime charged nor are they to be limited in number so long as they have some basis in fact and are asked by the prosecutor in good faith *(People v Williams,* 33 NY2d 904; *People v Alamo,* 23 NY2d 630; *People v Sorge,* 301 NY 198). There are, however, limitations. The defendant cannot be questioned about a criminal charge on which he has been acquitted *(People v Santiago,* 15 NY2d 640), and he cannot be asked whether he stands indicted of other crimes *(People v Cascone,* 185 NY 317). Likewise, a defendant cannot be questioned concerning immoral, vicious and criminal acts if the intent of such questions is to show from character or experience a propensity on the part of the defendant to commit the crime for which he is on trial *(People v Zackowitz,* 254 NY 192; *People v Johnson,* 31 AD2d 842; *People v Moore,* 20 AD2d 817.*"

The District Attorney also questioned defendant about a truancy adjudication, and the objection was sustained. He then asked defendant whether he and three others had accosted a young man and demanded money, and when it was refused, whether he had not jumped on the man, punched him, sat on him and tried to remove his wallet. Defendant denied it. The incident was the cause of defendant's being adjudged a juvenile delinquent. The fact that defendant was adjudged a juvenile delinquent may not be brought out, of course, but the acts underlying such adjudication may be elicited, provided they go to the defendant's credibility and are not unduly prejudicial as showing defendant's propensity to commit the type of crime for which he is on trial *(People v Sandoval,* 34 NY2d 371; *People v Vidal,* 26 NY2d 249, 253–254; *People v Reingold, supra).* The fact that defendant committed an assault while a juvenile had little value for impugning his credibility on this trial for rape. It was too remote in time and again it served no purpose but to show a propensity on the part of defendant to commit the sort of crime for which

he was on trial *(People v Moore,* 42 AD2d 268, 272). Defendant's counsel objected to the District Attorney pursuing this type of cross-examination and also demanded that a hearing be held to determine the scope of such further cross-examination by the District Attorney, but the court denied the request. Such hearing should have been held *(People v Sandoval,* 34 NY2d 371, *supra).*

Defendant also contends that the verdict was against the weight of the evidence, that the court erred in denying him the right to cross-examine complainant as to whether she was having regular sexual intercourse with her boyfriend, and that error was committed in the use of the name, Winston Mosely, upon the trial. We find these contentions to be without merit.

For the reasons above stated, however, the judgment should be reversed and a new trial granted whereat the defendant shall be entitled to a *Huntley* hearing as to the voluntariness of his admission to the officer on his apprehension.

SIMONS, J. (concurring). We concur in the determination that there must be a new trial but we do not accept the decision that the trial court should have charged coercion, second degree (Penal Law, § 135.60, subd 1) as a lesser included offense of rape, first degree (Penal Law, § 130.35, subd 1).

On the record of this case, there were no facts justifying the charge down to coercion. The victim testified to defendant's threats, his identification of himself as Mosely (a man involved in a rape murder, notorious in the Buffalo area) and that she was afraid for her life. The court properly refused to permit the jury to break down the evidence and in effect change the proof to determine that complainant was only afraid of physical injury rather than serious physical injury. It is one thing to ask the jury to accept or reject the complainant's evidence to determine if all the legal elements of a crime exist. It is quite another thing to permit them to adapt it to fit into a particular legal pigeonhole. The jury may not qualify the evidence to determine that while complainant was frightened, as she said she was, she was not really quite that frightened. At the very least, the request to charge coercion should not be granted without direct proof that the threat was only to do physical injury, proof which did not exist in this case (see CPL 300.50, subd 1; *People v Asan,* 22 NY2d 526).

Furthermore, as we read the commentary section cited by the majority, it does not conclude that coercion may be an included offense. It states only that sexual intercourse induced by intimidation is coercion, not rape.

Finally, we see objections to permitting coercion, second degree, to be charged as a lesser included offense of rape, first, under any state of facts. We are not sure that a woman in the process of being ravished formulates nice statutory distinctions between threats, express or implied, which place her in fear of serious physical injury as opposed to those portending only physical injury. But with the adoption of this rule, the jury must examine and refine the complainant's subjective state of mind with the benefit of hindsight and decide whether she was "raped" or "coerced". It must determine whether or not the victim resisted her attacker and, if so, why. The majority's legal analysis of the statutes may be logical but it creates an impossible practical test and in our judgment fosters the opportunity for jurors to indulge the frequently held but legally irrelevant belief that the victim may have been raped but "she probably asked for it."

MAHONEY and GOLDMAN, JJ., concur with WITMER, J.; SIMONS, J., and MOULE, J. P., concur in opinion by SIMONS, J.

Judgment unanimously reversed on the law and a new trial granted.