THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANK A. VICARETTI, JR., Appellant.

Fourth Department, November 5, 1976

*Peter L. Yellin (Andrew Fine* of counsel), for appellant.

*Lawrence T. Kurlander (Melvin Bressler* of counsel), for respondent.

MOULE, J. Defendant appeals from a judgment of conviction entered upon a jury verdict which found him guilty of rape in the first degree. He alleges 12 separate points of error including, *inter alia,* failure to establish a prima facie case, denial of requested instructions to the jury, and the admission of certain hearsay testimony.

The facts, as testified by complainant, are as follows: On April 23, 1974 complainant and a close friend, Victoria O'Mara, had spent the evening at the Fountainbleu Restaurant in Rochester, New York celebrating complainant's birthday. When the bar closed at 2:30 A.M., O'Mara went out to breakfast with a friend who had been tending bar. Complainant chose not to accompany them and instead drove home to her apartment. Along the way she observed defendant following her.

Upon her arrival at the apartment, defendant pulled up in his car and introduced himself. After making reference to an alleged mutual friend defendant asked if he could come up to her apartment for a cup of coffee. Although hesitant at first, complainant finally consented.

Once inside the apartment they talked briefly about the fact that complainant had been laid off from work. A short time later, while seated on the living room couch, defendant told complainant that he had a gun and that he wanted to have intercourse with her. While complainant kicked and squirmed, defendant lifted her off the couch and carried her toward the bedroom. Thinking that she could perhaps lock herself in the bathroom, she asked to be let down to use the toilet. Defendant, however, held the bathroom door so that she could neither close nor lock it. She then attempted to run out the front door of the apartment, but defendant caught up to her and blocked the way. He then once again picked her up and took her into the bedroom. After partially undressing complainant and himself, he had sexual intercourse with her. As

he got ready to leave, he told her that if she ever contacted the police he would say she "lured" him up to her apartment and he would also make sure she never got her job back.

Immediately after defendant left, complainant telephoned Victoria O'Mara and told her that she had been raped. While on her way to complainant's apartment, O'Mara waved down two policemen who subsequently accompanied her. They testified that when they arrived at the apartment complainant was hysterical and crying. Although at first hesitant to talk to the police on account of defendant's threats, she eventually told them the complete story and defendant was subsequently arrested and charged with rape in the first degree.

Defendant's first contention on this appeal concerns his prosecution under subdivision 1 of section 130.35 of the Penal Law, rape in the first degree by forcible compulsion, and charges that the decision to prosecute him for this crime rather than for sexual misconduct under section 130.20 of the Penal Law denied him equal protection of the law.

Pursuant to section 130.20 of the Penal Law a person is guilty of sexual misconduct, a class A misdemeanor, when "1. Being a male, he engages in sexual intercourse with a female without her consent." Subdivision 2 of section 130.05 provides that such lack of consent results from the use of "[f]orcible compulsion". Thus defendant contends that, both as a general proposition and under the facts of this case, the two statutes contain the exact same elements, viz., sexual intercourse by forcible compulsion. Since they prescribe different degrees of punishment (B felony v A misdemeanor), they grant unlimited discretion to the prosecution as to which offense will be charged in a given case. This, according to defendant, results in a denial of equal protection (see, e.g., *State of Oregon v Pirkey,* 203 Ore 697; *United States v Meyers,* 143 F Supp 1). While it may be true that under certain circumstances the crimes of rape in the first degree and sexual misconduct may be identical, that fact alone does not, however, under the prior case law of this State, amount to a denial of equal protection.

In *People v Eboli* (34 NY2d 281, 287) wherein a similar argument regarding coercion in the first and second degrees was dismissed, the Court of Appeals stated that it has "consistently held that overlapping in criminal statutes, and the opportunity for prosecutorial choice they represent, is no bar to prosecution. * * * In *People v. Lubow* (29 N Y 2d 58, 67), it was recognized that the statutory definition of solicitation as a

misdemeanor (Penal Law, § 100.05), embraced the elements of the lesser degree, solicitation as a 'violation' (Penal Law, § 100.00), and consequently, whenever the higher degree of solicitation was committed, so was the lower. Despite this inherent duplication, and the concomitant opportunity for choice by the District Attorney, prosecution for the higher crime was held permissible [citations omitted]." (See, also, *Mauney v United States,* 454 F2d 273; *United States v Hancock,* 441 F2d 1285, cert den 404 US 833; *Black v United States,* 405 F2d 187, cert den 394 US 990; *United States v Eisenmann,* 396 F2d 565; *Hutcherson v United States,* 345 F2d 964, cert den 382 US 894.)

The Court of Appeals also noted that while the existence of such prosecutorial discretion does not, on its face, violate either due process or equal protection, "unlawful discrimination in the exercise of a prosecutor's power to charge would violate the equal protection guarantee of the Constitution." *(People v Eboli,* 34 NY2d 281, 290, *supra.)*

Although defendant alternatively raises this abuse of discretion, he offers no proof that in prior cases involving similar factual situations, the prosecutor declined to charge defendants with rape in the first degree. Furthermore, in our opinion, the facts of this case clearly justify the prosecutor's choice of the more serious offense.

Defendant's second contention is that, assuming the validity of the charge of rape in the first degree, the prosecution failed to establish a prima facie case since it did not present sufficient evidence on the necessary element of forcible compulsion.

Subdivision 8 of section 130.00 of the Penal Law defines "forcible compulsion" as "physical force that overcomes earnest resistance; or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person". According to defendant's argument the prosecution had failed to establish either the necessary earnest resistance or the complainant's belief of an implied threat. We disagree, however. While the prosecution apparently relied primarily upon defendant's implied threat of serious physical injury, there was sufficient evidence presented under both definitions of forcible compulsion to warrant submission of the case to the jury and to justify the subsequent conviction.

With respect to the issue of "earnest resistance" defendant

correctly asserts that "where the charge is rape in the first degree, rape is not committed unless the woman opposes the man to the utmost limit of her power [and that the] resistance must be genuine and active *(People v. Carey,* 233 N. Y. 519; *People v. Warren,* 24 A D 2d 664)." *(People v Hughes,* 41 AD2d 333, 336.) However, it is equally true that the question of whether the resistance was sufficient, genuine and active is one of fact for the jury's consideration.

In the instant case the jury had for its consideration the relative size of defendant and complainant along with complainant's undisputed testimony that she struggled, tried to kick defendant, and tried to lock herself in the bathroom. Furthermore, it could consider her attempt to escape and her prompt assertion, albeit only to friends, that she had been raped. Although admittedly she did not scream, there was testimony that the adjoining apartment was unoccupied and that loud music was coming from the downstairs apartment of Patricia Barone. Thus the jury could consider whether under these circumstances the fact that complainant did not scream constituted a failure to resist earnestly.

Defendant's reliance upon *People v Hughes* (41 AD2d 333, *supra)* is misplaced. In *Hughes* the complainant and two male companions spent the night in defendant's room at a YMCA. After complainant had had intercourse with one of her companions, defendant arrived and after threatening her with an "instrument" (described at different times as a razor, knife and a box opener) he allegedly proceeded to rape her in the presence of her companions. In reversing the conviction, the Third Department stated that "[i]t is difficult to conclude that the complainant here waged a valiant struggle to uphold her honor. By her own testimony, the sum total of her resistive efforts was to call to one of her companions once for help and to push the defendant away and ask him to stop and to make one attempt to leave the bed." (41 AD2d 333, at p 336.)

However, it is important to note that aside from complainant's failure to resist, the court also based its decision on the lack of a "meaningful attempt to escape or to seek assistance, the incredible behavior of her male companions, and the delay in reporting the attack" *(People v Hughes, supra,* p 337). Thus, contrary to defendant's assertion, the mere lack of physical resistance was not determinative of the issue of forcible compulsion.

With respect to the issue of an implied threat, actual

physical resistance by the woman may be entirely lacking. "This is because it is the state of the woman's mind which controls. Therefore, in determining whether a woman fails to resist attack or resists only for a limited degree or time because of such fear, the jury is to consider the surrounding circumstances. *(People v. Yannucci,* 283 N. Y. 546, 549; *People v. Duegaw* [34 A D 2d 1043]; see *People v. Johnson,* 37 A D 2d 218, 221.) It is for the jury to determine the extent of the resistance required of an assaulted female, it being impossible to construct a general rule defining the exact line of conduct required in all such circumstances (see *People v. Connor,* 126 N. Y. 278)." *(People v Bercume,* 38 AD2d 356, 358.)

Defendant concedes that there was sufficient evidence presented at trial to establish that he had sexual intercourse with complainant and that he impliedly threatened her. However, he asserts that there was no evidence that complainant believed the threat or that she was placed in immediate fear of serious physical injury.

Defendant apparently contends that in order for a jury to convict under this section there must be precise testimony from the complainant that she believed his threat and was, therefore, placed in fear of serious physical injury. However, he cites no authority for this and there is no reason why her belief cannot be shown indirectly through circumstantial evidence rather than through a precise testimonial dialogue with the complainant.

Since the jury can properly consider the surrounding circumstances it could review defendant's statement that he wanted to have sex and that he carried a gun. Although admittedly complainant never saw a gun nor was one produced at trial, the jury could nevertheless consider whether complainant believed that defendant did have a gun. If the jury accepted this fact, then the finding of a fear of *serious* physical injury necessarily follows from the kind of weapon involved. Furthermore, the jury could consider complainant's own testimony that she had been threatened and that she was petrified of defendant. Based upon this, there was sufficient evidence before the jury to justify defendant's ultimate conviction.

Defendant's third, fourth and fifth contentions all relate to the admission, over objection, of certain testimony at trial. As his third contention he charges that the admission of testimony by complainant that her cousin had told her that

defendant's father was offering complainant $2,500 to drop the charges was hearsay, grossly prejudicial and constituted a denial of a fair trial.

Although this statement was decidedly hearsay and, therefore, was technically inadmissible at trial, the fact that it was admitted, even over objection, does not automatically require reversal. First of all, the entire issue of the offer and acceptance of the bribe, which was first raised by defendant during his cross-examination of complainant, is a collateral matter which has no direct effect on whether defendant was guilty of rape in the first degree. At best it relates only to the issue of complainant's credibility. As such the fact of complainant's acceptance of the bribe was more crucial than the issue of who originally offered it. Second, it would appear that the statement was not offered for its truth since no effort was made to corroborate its substance. Such a statement, offered solely to establish that the comment was made and not to establish its truth, would not contravene the hearsay restriction (see Richardson, Evidence [10th ed], § 200). Although admittedly no limiting instructions were given on this issue to the jury, the fact that it need not have decided the truth of the statement in order to find defendant guilty is indicative of the fact that the truth or falsity of this statement was not directly relevant to the charge under the indictment.

Consequently, the mere mentioning of defendant's father's name in connection with the bribe did not deprive defendant of a fair trial. To ascribe to this assumption would suggest that defendant may have been or could be convicted merely upon the actions of his father which admittedly occurred subsequent to the crime charged.

As his fourth contention defendant urges that his motion for a mistrial should have been granted following Victoria O'Mara's testimony that the police told complainant that "these are the kind of people that have to be put away". While this statement also constituted hearsay, defendant's objection to its admission was sustained and the court ruled that the answer should be stricken. Since the answer was not properly before the jury and could not be considered by it in reaching its determination, we do not feel that the denial of the motion for a mistrial was reversible error.

Although defendant argues that this comment implied some prior criminal record and that this implication could have influenced the jury, this argument is totally without merit. At

the time the police made this comment, they were still in the process of obtaining preliminary information from complainant and could not have checked defendant's prior record. To assume, therefore, that a jury would draw this inference is totally unwarranted.

The fifth contention raised by defendant is that the admission of Victoria O'Mara's testimony that complainant had told her she had been "threatened" also constituted hearsay and was highly prejudicial to his defense.

In a trial for forcible rape, any witness who heard complainant promptly disclose the fact that she had been raped, may testify at trial that such a statement was made. Although hearsay, this testimony would be admissible under the *res gestae* exception to the hearsay rule. However, the witness may not relate details or particular facts of the incident which complainant might have told her (see generally, Richardson, Evidence [10th ed], § 292; see, also, *Baccio v People,* 41 NY 265).

Here, O'Mara's testimony went far beyond merely stating that complainant had told her that she had been raped and to the extent it did go beyond that statement, it was hearsay and should not have been admitted. However, under the facts of this case its admission did not constitute reversible error because similar testimony had already been given by both complainant and the investigating detective. Since defendant did not object to the admission of the detective's statements that complainant had said she was "threatened", O'Mara's testimony on this issue was merely cumulative and could not, in any event, have influenced the verdict of the jury.

Defendant's sixth contention concerns the admissibility of an oral exculpatory statement which he gave to the police immediately prior to his arrest and which was admitted into evidence at trial through the testimony of one of the arresting detectives. Besides categorically denying that he had been with complainant that evening, defendant told the police that he was not at the Fountainbleu Restaurant and that he had been home at 11:00 P.M. However, after further questioning he admitted that he had been at the restaurant and that he had not returned home until 3:30 A.M. Defendant asserts that this statement was inadmissible since it was hearsay, was neither an admission nor a confession, and could not have been used for impeachment purposes because he did not testify in his own behalf.

Prior to the commencement of the trial of this indictment defendant unsuccessfully moved to suppress the statement on the ground that he had not been adequately informed of his *Miranda* warnings. He also moved, successfully this time, to limit the detective's testimony to only those portions of his statement which the prosecution had specifically set forth in its pretrial notice pursuant to CPL 710.30.

When the issue of this statement was subsequently raised at trial, defendant did not object to its initial introduction during the direct examination of the arresting detective. Rather, his only objection occurred when the prosecution attempted to elicit statements beyond the scope provided for by the court and the CPL (art 710) notice. He specifically did not object upon the hearsay ground.

To enable defendant to raise this ground in the interests of justice for the first time on this appeal would, in our opinion, seriously undermine the statutory requirement of raising objections at trial and would permit defendants to analyze their trial tactics retrospectively.

Although a discussion of the admissibility of this statement is obviated by defendant's failure either to object at trial or to raise the ground for objection at the *Huntley* hearing, it is important to note that the mere fact that defendant categorizes this statement as exculpatory does not necessarily mean that it exceeds the scope of the established hearsay exceptions. As stated by the Supreme Court in *Miranda v Arizona* (384 US 436, 477) with reference to the necessity of providing adequate warnings for every statement "no distinction may be drawn between inculpatory statements and statements alleged to be merely 'exculpatory.' If a statement made were in fact truly exculpatory it would, of course, never be used by the prosecution. In fact, statements merely intended to be exculpatory by the defendant are often used to impeach his testimony at trial or to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication. These statements are incriminating in any meaningful sense of the word and may not be used without the full warnings and effective waiver required for any other statement."

Defendant's seventh contention is that the failure of the prosecution to grant immunity to a key defense witness deprived defendant of his constitutional right to compulsory

process as well as his right to a fair trial. This argument, however, is totally without merit.

It is well established that a defendant has no constitutional right to require the conferral of immunity on a defense witness who refuses to testify (see *Earl v United States,* 361 F2d 531, rehearing den 364 F2d 666, cert den 388 US 921; *United States v Bautista,* 509 F2d 675; *United States v Allstate Mtge. Corp.,* 507 F2d 492; *United States v Ramsey,* 503 F2d 524; *Cerda v United States,* 488 F2d 720; *United States v Berrigan,* 482 F2d 171).

Although in the present case defendant additionally frames his argument in terms of a violation of his Sixth Amendment right "to have compulsory process for obtaining witnesses in his favor," this still would not justify reversal. The mere fact that defendant has a constitutional right to have favorable witnesses subpoenaed does not mean that once those witnesses are present in court the prosecution is required to confer immunity upon them.

Under his eighth contention defendant urges reversal based upon certain portions of the prosecutor's summation which defendant asserts were improper, inflammatory and highly prejudicial. We have, however, carefully examined the entire summation and the improprieties, if any, do not warrant reversal.

Although admittedly the prosecutor improperly characterized the respective burdens of proof in a criminal case and also erroneously summarized the complainant's testimony, the possible detrimental effect of these errors was sufficiently alleviated by the curative instructions of the court. Based upon the evidence adduced at trial, the prosecutor's other comments were well within the wide latitude accorded him in his summation (see *People v Adams,* 21 NY2d 397; *People v Lombardi,* 20 NY2d 266).

Defendant's ninth, tenth and eleventh contentions all relate to the court's instructions to the jury and assert error in the court's failure to accede to defendant's requests to charge coercion in the second degree and sexual abuse in the third degree as lesser included crimes as well as the court's failure to inform defendant prior to summation of its intention to charge, *sua sponte,* attempted rape in the first degree.

With respect to the requested charge of coercion in the second degree, a person is guilty of that crime "When he compels or induces a person to engage in conduct which the

latter has a legal right to abstain from engaging in * * * by means of instilling in him a fear that, if the demand is not complied with, the actor or another will: 1. Cause *physical injury* to a person." (Penal Law, § 135.60, subd 1; emphasis supplied.)

Defendant argues that since this degree of coercion only requires fear of *physical injury* as opposed to fear of *serious physical injury* or *death* as required for rape in the first degree, it is a lesser included crime and under the facts of this case should have been charged. In support of this argument, he relies entirely upon our decision in *People v Greer* (49 AD2d 297). In *Greer* we stated (p 301) that "[i]t is clear that coercion in the second degree is not a lesser offense of the crime of rape in the first degree insofar as it rests on the use of actual physical force upon the woman. It may, however, be a lesser included offense of rape in the first degree which rests upon the claim of use of threat of death or serious physical injury. Upon the evidence in this case the jury could have found that defendant's threat, in view of his use of minimal force, was at most cause for complainant to fear physical injury within the terms of coercion in the second degree, but not *death or serious physical injury* as required to establish forcible compulsion."

In *Greer,* however, the defendant made no threat as to the possible use of a deadly weapon. Rather, he merely made reference to the fact that his name was "Mosely", a notorious local criminal involved in a rape and murder case. Since there was no immediate threat of harm nor did the defendant inform the complainant that he was armed, that case is not applicable to this situation.

In the present case, in order to justify the charge of coercion, it is necessary to assume that the threat of using a gun could only instill in a complainant the fear of mere physical injury and not serious physical injury. This assumption would be totally unwarranted. If the jury found that defendant possessed the gun and that complainant believed that he did, the fact that such a weapon, if used, would result in serious physical injury is the only possible conclusion available. Thus, the decision in *Greer* should be distinguished and its rationale should not be applied to those situations where the threat concerns the use of a deadly weapon or of deadly physical force.

With respect to the requested charge of sexual abuse in the

third degree, section 130.55 of the Penal Law provides that "[a] person is guilty of sexual abuse in the third degree when he subjects another person to sexual contact without the latter's consent".

"Sexual contact" is further defined as meaning "any touching of the sexual or other intimate parts of a person not married to the actor for the purpose of gratifying sexual desire of either party." (Penal Law, § 130.00, subd 3.)

Thus, since the element of lack of consent, as required by sexual abuse in the third degree, may result from either forcible compulsion (see Penal Law, § 130.05, subd 2, par [a]) or from express or implied acquiescence (see Penal Law, § 130.05, subd 2, par [c]) defendant argues that he could not have committed rape in the first degree without also committing sexual abuse in the third degree.

Defendant's analysis, however, fails to take into consideration either the facts of this case or the intended purpose of section 130.55 of the Penal Law. In the instant case, the sole evidence of any "contact" between the parties, for the purposes of article 130 of the Penal Law, is complainant's testimony that defendant achieved penetration. There was no testimony of any fondling or caressing. Thus if the jury believed complainant's testimony it could properly find that intercourse occurred. If, however, it chose to disbelieve this testimony, there was no evidence upon which it could find that sexual activity, short of intercourse, took place.

While it may be argued that the act of intercourse could fall within the general definition of "sexual contact", such a conclusion would not be justified. The use of the word "touching" rather than mere contact necessarily implies the use of one's hands either to fondle or to manipulate. This interpretation is reinforced by the history surrounding the enactment of the statute.

Section 130.55 of the Penal Law was originally designed to supersede the former "carnal abuse of a child". That section had dealt "with improper handling and fondling of children's sexual organs, or indecent or immoral practice therewith" (Marks and Paperno, Criminal Law in New York, § 275). In revising these statutes the Legislature felt that there "was the general need for the proscription of improper *sexual conduct not constituting either sexual intercourse,* as in rape, or deviate sexual intercourse, as in sodomy." (Marks and Paperno, *supra,* § 275; emphasis supplied.) This analysis is fur-

ther supported by the McKinney's Practice Commentary which states that "[t]he term 'sexual contact' will be applicable to such acts as the manipulation of a boy's genitals, digital penetration of a girl's private parts, and the unconsented fondling of a woman's breast." (Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law, § 130.00, p 447.)

. Thus, it appears that the legislative intent in drafting this section was to limit its applicability to cases of sexual contact which fall short of actual intercourse. The use of the term "touching" in defining "sexual contact" should therefore be strictly construed to apply to only those instances where there is digital manipulation or manual handling or fondling. The marked absence of any proof of this type of "contact" therefore justified the court's denial of this request.

Defendant also argues that the court's failure to inform him prior to the summations that it intended *sua sponte* to charge attempted rape in the first degree as a lesser included offense constituted reversible error.

CPL 300.10 (subd 3) provides in part that "[t]he court must specifically designate and *submit,* in accordance with the provisions of sections 300.30 and 300.40, *those counts and offenses contained and charged in the indictment* which the jury are to consider. Such determination must be made, and the parties informed thereof, prior to the summations." (Emphasis supplied.)

CPL 300.30 (subd 1) defines "submission of a count" of an indictment as "submission of the offense charged therein, *or of a lesser included offense,* or submission in the alternative of both the offense charged and a lesser included offense or offenses." (Emphasis supplied.)

An integrated reading of these sections indicates that the Legislature intended that the court must inform the parties prior to summation not only of the specific counts of the indictment which it intended to submit to the jury but also of the lesser offenses contained within those counts.

This issue appears to be one of first impression at least with respect to jury trials. In nonjury situations, however, which are governed by CPL article 320, prior cases have required that the court specifically apprise defendant prior to summation which lesser included offenses it will consider in rendering a verdict (see *People v Moody,* 52 AD2d 959; *People v Jack,* 85 Misc 2d 299). Since CPL 320.20 (subd 5) provides that

in determining this issue the court in a nonjury case "must be governed, so far as appropriate and practicable, by the provisions of article three hundred governing the court's submission of counts and offenses to a jury upon a jury trial" (see *People v Jack, supra),* the analyses of these nonjury decisions, at least insofar as they interpret the requirements of CPL article 300, are equally applicable here. Thus the court in the instant case should have informed defendant prior to summation that it intended to charge attempted rape in the first degree. Despite this apparent affirmative burden on the court, its failure to so inform defendant in this case does not constitute reversible error.

The issue of whether or not defendant had had sexual intercourse with complainant was never seriously contested throughout the trial—the main thrust of defendant's case being that no forcible compulsion occurred. To assume, as defendant contends, that the entire theory of the defense and, therefore, of defendant's summation would have been altered had he known of the intended charge on attempt is specious and we conclude under the facts of this case, that the failure to so inform him did not result in a denial of his right to an effective summation.

We have examined defendant's twelfth and last contention that the sentence imposed by the court was excessive and find it to be without merit.

The judgment of conviction should be affirmed.

MARSH, P. J., CARDAMONE, MAHONEY and DILLON, JJ., concur.

Judgment unanimously affirmed.