THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
CORNELIUS IVEYS, Appellant.

Fourth Department, April 13, 1979

APPEARANCES OF COUNSEL

*Richard H. Speranza, Public Defender (Leonard Tilney* of counsel), for appellant.

*Aldo L. Di Florio, District Attorney (Shavasp Hanesian* of counsel), for respondent.

### OPINION OF THE COURT

DOERR, J.

Defendant was convicted after a jury trial of attempted robbery first degree (Penal Law, § 160.15, subd 1) and murder second degree (Penal Law, § 125.25, subd 3) in relation to the shotgun death of one Louis Matthews during the early afternoon hours of March 22, 1976 on Garden Avenue in the City of Niagara Falls. The following day defendant and one Arthur Hamilton were taken into custody by the police in Rochester, New York, who held both individuals for the Niagara Falls authorities. Later that same day defendant was questioned by Lt. Zaccarella, Chief of the Niagara Falls Homicide Squad, and his assistant Detective Coney. At first defendant denied being in Niagara Falls the previous day but later gave the police a written statement in which he admitted his presence there in an automobile being operated by Hamilton. He said that Hamilton suddenly stopped the vehicle on the wrong side of Garden Avenue, jumped out of the car with a shotgun, and the shooting of Matthews occurred. Defendant said that he was scared, jumped behind the wheel and drove off with Hamilton as a passenger.

The following evening, March 24, 1976, a second written statement was taken from defendant at 8:00 P.M. in the Niagara Falls Detective Bureau by Detective Pierce. In this statement defendant said that while riding around with Hamilton they picked up one Sampson Sealey who upon seeing decedent said that the latter had some money and suggested robbing him, at which point Hamilton stopped the car and jumped out with the shotgun. The fatal wounding of Matthews then occurred.

On July 1, 1976 a *Huntley* hearing was held relative to the voluntariness of both written statements. Defendant's motion to suppress these statements was denied based upon the testimony of Lt. Zaccarella along with that of Detectives Clute and Pierce. There was no mention by the prosecution of any oral statement made by defendant. At the hearing when

specifically asked whether he had spoken to defendant on March 24, Lt. Zaccarella did not recall doing so and said that he did not believe that he had.

On September 20, 1976 jury selection was completed and the jurors sworn. The court adjourned the opening of the trial to the following day at 2:00 P.M. When the court reconvened on the afternoon of September 21, the District Attorney advised the court that prior to jury selection he had informed defense counsel that it was his intention to reopen the *Huntley* hearing because additional information had come to his attention with respect to statements made by defendant while in custody which the People intended to offer during the trial. Such notice was oral and defendant timely objected to it and moved to preclude the use thereof on the grounds that the notice itself was insufficient and highly prejudicial because the defense had been prepared in relation to the statements indicated in the District Attorney's original notice of intent and used at the July 1 *Huntley* hearing, and finally, that such application was contrary to CPL 710.30.

The court granted the People's motion and treated the new hearing as a continuation of the July 1 proceedings. The only witness called was Lt. Zaccarella who now testified that at a quarter to 12 on the evening of March 24, 1976 he interrogated defendant who told him that he had had custody of the gun and that on the day of the homicide he took it out of a dresser drawer in the basement of his mother's home, checked it over to make sure that it was loaded and said that the safety was not on because, what good would a gun be if it were not loaded and the safety were on it. The lieutenant also testified that the defendant told him that he, with Hamilton, took the gun to the automobile that was used during the commission of the crime. The lieutenant testified that although this was new information he saw no reason to reduce same to writing since there were already two written statements made by defendant and that although Niagara Falls Police Department procedures require written waivers signed by defendants prior to the taking of statements, he did not feel that they applied with respect to oral statements. This would appear to be highly unusual testimony from the Chief of the Homicide Squad with 15 years' police experience. At the conclusion of this hearing the court ruled that such admissions could be used upon the trial and advised defendant that "if, by reason of this ruling, you feel that you need

additional time to prepare, *at the conclusion of the People's case,* advise me and you will be granted an adjournment." (Emphasis supplied.)

Based upon the seriousness of the charge and the gravity of such inculpatory statements the ruling of the court was erroneous. Such error can in nowise be denominated as harmless. By statute this defendant was entitled to prior notice of the intention by the People to offer such statement against him. CPL 710.30 in pertinent part provides: "2. Such notice must be served within fifteen days after arraignment and before trial, and upon such service the defendant must be accorded reasonable opportunity to move before trial, pursuant to subdivsion one of section 710.40, to suppress the specified evidence. For good cause shown, however, the court may permit the people to serve such notice thereafter and in such case it must accord the defendant reasonable opportunity thereafter to make a suppression motion." Since the oral notice here failed to meet the statutory mandate and was untimely in any event, the limited discretion reserved to the court to allow such late notice had to be firmly grounded on "good cause shown". The prosecution should have been aware of such admissions prior to jury selection (the alleged statement was contemporaneous with the written statements) and it has been held that lack of continuity or other office failure "does not constitute good cause for a failure to give required notice before trial" *(People v Briggs,* 38 NY2d 319, 321). The court in *Briggs* concluded (p 324) that, "[t]he issue is not a trivial or merely technical one. Prior statements, especially oral ones, to a police officer, are accorded high credibility by fact finders, jury or Judges. Whether in fact they were made, whether they were voluntary, and the precise form which they took may be crucial to the determination of innocence or guilt. To deprive defendants in criminal matters unnecessarily of an advance opportunity to investigate the facts and circumstances is neither fair nor conducive to establishing the truth through the adversary process with the assistance of counsel. A cavalier treatment of the statute's requirements frustrates its ends".

As long ago as 1967 our court became concerned with prosecutorial failure to give the required notice to defendants of the intended use of written and oral statements and reversed a conviction when one of the grievous errors was noncompliance with the predecessor statute (Code Crim Pro,

§ 813-f); *(People v Lee,* 27 AD2d 700; see, also, *People v Greer,* 42 NY2d 170, affg 49 AD2d 297; *People v Slater,* 53 AD2d 41; *People v Boone,* 51 AD2d 25, 27). The importance of such oral admissions during the trial is obvious from the reference to them by the prosecutor during his opening and closing statements to the jury and most significantly, the fact that after having retired for its deliberations the jury returned in eight minutes to ask for the two written statements made by defendant along with the police report prepared by Lt. Zaccarella based upon the oral admissions.

Since we are ordering a new trial, we caution the prosecutor to be more circumspect in his remarks and particularly during summation. The District Attorney operated in the penumbral area of forbidden comments in reviewing the trial testimony of defendant's girlfriend concerning her knowledge of the shotgun and denominating it as a fairy tale. In like manner his comment concerning the prior trial of Hamilton was unfortunate as were his comments on facts not in evidence. In commenting on defendant's conduct after the shooting his observation that "I don't expect naturally, a man of his type to have run to the police" was unfair to say the least as was his bolstering of Lt. Zaccarella's testimony with the repeated observation that he is "a good police officer." We also admonish the prosecutor to limit his comments on statements to those actually in evidence.

The appeal by defendant from the denial by County Court of his post conviction motion to vacate the judgment of conviction is not properly before the court (CPL 450.15; 460.15). However, if that appeal were properly before the court we would affirm.

The judgment should be reversed and a new trial granted.

CARDAMONE, J. P., HANCOCK, JR., SCHNEPP and MOULE, JJ., concur.

Judgment unanimously reversed, on the law and facts, and a new trial granted.