OPINION OF THE COURT
Joel M. Goldberg, J.
The defendant’s motion, dated October 20, 2009, for resentencing pursuant to the Drug Law Reform Act of 2009 (2009 DLRA) and CPL 440.46, upon consideration of the People’s answer, dated December 22, 2009, and the defendant’s reply affirmation, dated January 6, 2010, is decided as follows:
The defendant is hereby offered a new determinate sentence of seven years followed by two years of postrelease supervision (PRS) in lieu of his current sentence of 6 to 18 years for the conviction of criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]). (See Part I, below.) The defendant’s request for resentencing on the conviction of conspiracy in the second degree is denied, because that conviction is not eligible for resentencing consideration. (See Part II, below.)
The defendant may withdraw his resentencing application or, alternatively, indicate that he wishes to appeal this court’s order. If the defendant does not elect either of these two options by the adjourned date of this motion, the court will vacate the *228 defendant’s existing sentence on the conviction for criminal possession of a controlled substance in the third degree and impose the aforementioned determinate sentence to run concurrent to the 6-to-18-year sentence being served on the conviction for conspiracy in the second degree.
The motion papers by the parties included as exhibits the defendant’s criminal record, the defendant’s presentence report investigation from the Department of Probation, the defendant’s New York State Department of Correctional Services disciplinary and achievement records, and personal letters from the defendant’s family. The court is additionally familiar with the facts of the case, having presided over the defendant’s case as well as the nonjury trial of two of the codefendants.
I.
The Facts of this Case
The defendant was charged with conspiring with 13 other individuals between May 15, 2003 and April 29, 2004 to commit a class A-I felony, namely, criminal possession of a controlled substance in the first degree (CPCS 1). (The weight threshold required for CPCS 1 was subsequently increased from possession of four to possession of eight ounces by the Drug Law Reform Act of 2004 [2004 DLRA] [L 2004, ch 738, §§ 21, 22 ]. This change resulted in the subsequent reduction of the top count of the defendant’s indictment to criminal possession of a controlled substance in the second degree, a class A-II felony). The defendant was a high-ranking member of a drug-selling organization headed by codefendant Tracy Ortiz, to whom the defendant directly reported.
Extensive wiretap evidence in the case revealed that the Ortiz organization possessed and sold drugs, including crack cocaine and heroin, through a coordinated system of round-the-clock shifts of sellers and re-suppliers filling telephone orders placed to the organization’s phones from numerous customers. In addition to supervising these sellers, the defendant was also involved in street sale transactions, resulting in his being wiretapped on a weekly basis on the organization’s cell phone taking orders from customers.
On April 28, 2004, based on information of a planned sale of narcotics intercepted by a wiretap, the defendant was observed making a drug transaction and arrested in possession of just over one-half ounce of crack cocaine. In addition to the conspiracy, the defendant was additionally indicted for one count of *229 criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]), three counts each of criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]), and three counts of criminal possession of a controlled substance in the fourth degree (Penal Law § 220.09 [1]).
On March 5, 2005, the defendant pleaded guilty to one count of criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]) and one count of conspiracy in the second degree (Penal Law § 105.15). On March 15, 2005, the defendant was sentenced to the negotiated sentence of two concurrent prison terms of 6 to 18 years.
The defendant did not appeal.
Under current law, the defendant’s convictions remain class B felonies. However, pursuant to the 2004 DLRA, criminal possession of a controlled substance in the third degree for a first felony offender is now punishable by a determinate sentence structure carrying a maximum sentence of nine years plus two years’ postrelease supervision. The 2009 DLRA incorporates by reference the same standard for granting relief set forth in the 2004 DLRA.
This court recognizes that although the defendant’s sentence under the prior law was part of a negotiated plea, resentencing must be granted “unless substantial justice dictates” otherwise. (CPL 440.46 [3] [incorporating by reference the provisions of the 2004 DLRA (L 2004, ch 738, § 23)].) Therefore, there is a presumption in favor of granting a motion for resentencing. (People v Beasley, 47 AD3d 639, 641 [2d Dept 2008], citing People v Salcedo, 40 AD3d 356, 356-357 [1st Dept 2007], lv denied 9 NY3d 850 [2007].)
The Defendant’s Criminal Record
At the time of the plea in this case, the defendant had open felony cases in Connecticut for sale of a controlled substance, forgery, and first degree assault. The defendant had failed to appear in those cases prior to being arrested on this case. Following the defendant’s sentence in this case, the defendant was returned to Connecticut where he pleaded guilty to the three felony charges as well as to two felony charges of “failure to appear.” He received five concurrent prison terms having an aggregate minimum of four years and a maximum of 10 years with “execution suspended after four years” for those sentences longer than four years. In addition, the defendant was sentenced to five years’ probation. All of these sentences were imposed to run consecutively to the sentences in this case.
*230 Although this case was the defendant’s first felony conviction, the defendant’s criminal record additionally includes a youthful offender adjudication in Kings County for criminal sale of a controlled substance in the third degree in 1993 resulting in a sentence of probation which was revoked in 1996, a Kings County conviction for criminal possession of marihuana in 1996, and three misdemeanor convictions in Florida in 2000 for resisting an officer, obstruction by disguise, and domestic violence battery.
The Defendant’s History while Incarcerated on this Case
The defendant has a mixed record while incarcerated on this case. The defendant has three disciplinary violations: (1) a tier II violation in 2007 for “being out of place and violating a direct order” resulting in the loss of privileges and seven days keeplock; (2) a tier III violation for “committing an unhygienic act and lewd conduct” in 2005 for urinating on the side of a building resulting in loss of privileges and four months in the solitary housing unit (SHU), three months of which were suspended; and (3) a tier III violation for “engaging in an unauthorized organization” in 2007 for his membership in the “Trinitarios” gang resulting in 92 days in the SHU, loss of privileges, and his removal from the position of inmate grievance representative for 24 months. The 2007 tier III violation stemmed from a fight between prisoners of rival gang affiliations involving over 25 inmates which resulted in three inmates being stabbed.
The defendant has not had any additional disciplinary violations since 2007. He completed several rehabilitation programs (a six-month alcohol and substance abuse treatment program in 2006 and an aggression replacement training program in 2007), vocational training programs, and voluntarily participated in the “Inside/Out Dads Program” and the “Active Parent Program.”
The court finds that the defendant’s positive rehabilitation efforts are commendable, although they cannot entirely erase from consideration the violations he committed.
Proposed Sentence
Taking all of these factors into consideration, as well as the legislative policy favoring granting the application, the defendant, on the conviction for criminal possession of a controlled substance in the third degree, is offered a new determinate sentence of seven years with two years’ PRS. This seven-year sentence, with good behavior credit (disregarding the good *231 behavior time the defendant may have lost as a result of his disciplinary violations), would make the defendant eligible for release (to serve the Connecticut sentences) at roughly the same time as his current sentence on this conviction as well as his concurrent sentence of 6 to 18 years on the conspiracy conviction.
II.
The omission of class B felony drug conspiracy convictions from the remedial provisions of the 2009 DLRA appears not to have been a legislative oversight. Nor does the omission of this crime as a resentence-eligible offense constitute such an arbitrary and unreasonable distinction so as to amount to a denial of the defendant’s constitutional right to equal protection of the law.
As a first step in this analysis, it should be noted that although the 2004 drug law sentencing reforms of the 2004 DLRA, codified at Penal Law § 70.71, lowered the maximum penalties for convictions for class A-I and class A-II drug felonies for offenders with no prior felony convictions, those same class A drug felonies, nevertheless, remain a basis for charging conspiracy in the second degree. (See Penal Law § 105.15.) For first offenders, the 2004 DLRA lowered class A-I felony sentences to determinate sentences of between 8 and 20 years from indeterminate sentences having a maximum of life and a minimum of from 15 to 25 years. Class A-II felony sentences were lowered to determinate sentences of between 3 and 10 years from indeterminate sentences having a maximum of life and a minimum of from 3 to 8V3 years. Five years’ PRS is also included under the revised class A drug felony law. (See Penal Law § 70.71.) (For purposes of this decision, it is not necessary to discuss the greater class A felony sentencing ranges provided in Penal Law § 70.71 for offenders with prior felony or violent felony convictions.)
Because the Legislature did not change the definition of the class B felony of conspiracy in the second degree to take into account the lower sentences for class A drug felonies which no longer carry a maximum of life in prison, conspiracies to commit a class A drug felony now carry a potential maximum sentence of 25 years that is significantly more severe than the maximum sentence authorized for the completed drug crime. For example, under present law, conspiracy to commit a class A-II drug felony carries a maximum potential indeterminate *232 sentence for an offender with no prior felony convictions of 8Vs to 25 years, a significantly longer potential sentence than the A-II felony itself, which has a maximum determinate sentence of 10 years.
Also, the sentence structure of conspiracy in the second degree does not take into account the reduced sentences for class B drug felonies in Penal Law § 70.71. The class B felony of conspiracy in the second degree continues to carry a maximum potential indeterminate sentence for a first felony offender of 8Vs to 25 years, even though the maximum sentence for a completed class B drug felony for a first offender is a determinate sentence of nine years plus two years’ PRS.
Nevertheless, it is apparent that the failure to make drug conspiracy convictions eligible for resentencing under the 2009 DLRA was not a legislative oversight, but, rather, a continuation of a legislative policy dating back to the original reforms in the 2004 DLRA not to alter the sentencing structure for convictions for conspiring to commit a class A drug felony. Although the new sentence structure for class A-I and class A-II drug felonies was enacted in 2004, effective January 13, 2005 (L 2004, ch 738, § 36), the sentencing disparity between second-degree conspiracy involving drugs and the class A drug offense which is the object of the conspiracy charge has been continued by the Legislature through the enactment of the 2009 DLRA. It is thus evident that the 2009 drug law sentencing reforms were not intended to encompass convictions for conspiracies to commit class A drug felonies. (See People v Diaz, 68 AD3d 497 [1st Dept 2009] [defendant eligible for resentencing under 2004 DLRA for class A drug felony convictions but not for concurrently imposed sentence for class A felony of conspiracy in the first degree].)
It would indeed be anomalous, if not also a denial of equal protection of the law to post-2004 DLRA offenders, to apply the ameliorative resentencing provisions of the 2009 DLRA to benefit drug conspiracy offenders who committed the crime prior to January 13, 2005, the effective date of the 2004 DLRA sentencing changes, but at the same time apply existing law to drug conspiracy offenders who committed the same offense after the effective date of the 2004 DLRA. Put another way, although the “new” sentence structure does not specifically apply to conspiracies to commit drug crimes, the defendant is seeking to be resentenced under the “new” sentence structure for the drug conspiracy he committed while the “old” sentence structure was in effect, even though the “old” conspiracy sentence *233 structure continues to be applicable to those who presently commit the same crime. To give this interpretation to the 2009 DLRA would more closely approach, if not actually constitute, an equal protection violation as to those defendants currently charged with class B drug conspiracies.
The defendant’s argument that construing the 2009 DLRA to deny him the opportunity to be resentenced on the class B conspiracy in the second degree conviction denies him equal protection of the law as compared with those who are convicted of class B drug felonies defined in article 220 or 221 of the Penal Law is unavailing under traditional equal protection analysis. New York’s Equal Protection Clause is modeled after its federal counterpart. (Matter of Walton v New York State Dept. of Correctional Servs., 13 NY3d 475 [2009].) “Unless a suspect class or fundamental right is involved, which is not the case here, classifications that create distinctions between similarly-situated individuals will be upheld if they are rationally related to a legitimate government interest.” (Walton at 492.) For example, the Equal Protection Clause does not mandate absolute equality of treatment of offenders in determining whether a prior felony conviction can be used to enhance a sentence. Out-of-state felony convictions for acts that would not be felonies in New York may be used to enhance a New York sentence even though a person convicted of that same act in New York would not face the same consequences. (See People v Parker, 41 NY2d 21, 25 [1976] [decided based on prior Penal Law § 70.06 (1) (b) (i) which now provides that the out-of-state felony conviction must be based on an act that would also be a felony in New York].)
In determining whether a legislative classification is rationally related to a legitimate government interest, the courts should “defer to the Legislature, which is presumed to know all facts that would support a statute’s constitutionality — a presumption which must be rebutted beyond a reasonable doubt.” (People v Walker, 81 NY2d 661, 668 [1993] [holding, notwithstanding the defendant’s equal protection argument, that a prior felony grand larceny conviction may be a predicate felony under Penal Law § 70.06 even though at the time of the defendant’s subsequent felony the requisite monetary value of the stolen property for grand larceny had been raised from $250 to $1,000 and the facts of the defendant’s prior conviction would only constitute the misdemeanor of petit larceny at the time the subsequent felony was committed].)
The “rational basis” test to defeat an equal protection argument is far from a demanding one; it requires employment of *234 judicial restraint; it may be met by any reasonably conceivable state of facts to support the classification; and the rationale for the classification need not be articulated in the legislation itself. (People v Knox, 12 NY3d 60, 69 [2009]; FCC v Beach Communications, Inc., 508 US 307, 314-315 [1993].)
The People argue that those who conspire to commit class A drug felonies were rationally excluded from the 2009 DLRA because they “are not the type of drug-addicted, low-level, nonviolent offenders who were the focus of the DLRAs,” because such conspiracies may embrace well-organized, large-scale, ongoing, widespread drug operations involving large quantities of narcotics. (People’s mem of law at 9.) This very well could have been the Legislature’s “rational basis” for not including class B drug conspiracies.
Obviously, not every offender who could be charged with a class B drug conspiracy would fit the People’s above-noted criteria. For example, a drug-addicted, low-level, nonviolent offender could be guilty of a class B conspiracy to commit a class A-II drug felony by acting only one time as a mere deliverer of as little as one-half ounce of a substance containing a narcotic drug, without even knowing the weight of the substance being delivered. (Penal Law § 220.41 [1].)
Nevertheless, the failure to include “low-level” conspirators within the scope of the drug law sentencing reforms, even if their exclusion would seem to run counter to the purpose of those reforms, does not mean that the law should be interpreted to include drug conspirators. (See Rodriguez v United States, 480 US 522, 525-526 [1987] [“(N)o legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice — and it frustrates rather than effectuates legislative intent simplistically to assume that whatever furthers the statute’s primary objective must be the law”].)
This case does not present a situation where the Legislature enacted a comprehensive sentencing scheme but omitted a necessary component which needed to be included in order to effectuate the legislation. (People v Tolbert, 93 NY2d 86 [1999]; People v Green, 68 NY2d 151 [1986].) In Tolbert and Green where the Legislature did not provide a minimum sentence for class E persistent violent felony offenders but provided that the maximum sentence for a persistent violent felony was life imprisonment, it was appropriate for the courts to establish *235 that the minimum sentence would be the same sentence as that enacted for class E second violent felony offenders. Modifying the sentence range for current class B drug conspiracies is not similarly essential to effectuating the purposes of the DLRAs nor is including that crime as a resentence-eligible offense necessary to effectuate the legislatively perceived purposes of the 2009 DLRA.
That the Legislature left the choice to prosecutors as to which offenders to charge with conspiracy in the second degree and possibly thereby include “low-level” offenders, as well as the more serious offenders who may have been the ones the Legislature perceived should be charged, is not a defect of constitutional dimension. It is not uncommon for the Legislature to enact criminal statutes having different penalties for the identical conduct and leave it to the discretion of the prosecutor whether to charge the more or less serious offense. There is a violation of the Equal Protection Clause only where there is a prosecutorial abuse of this discretion. For example, the class A misdemeanor of coercion in the second degree (Penal Law § 135.60 [1], [2]) is identical to the class D felony of coercion in the first degree (Penal Law § 135.65 [1]; People v Discala, 45 NY2d 38 [1978]; People v Eboli, 34 NY2d 281 [1974]). The class A misdemeanor of sexual misconduct (Penal Law § 130.20 [1]), when the victim is less than 11 years of age, is identical to the class B felony of rape in the first degree (Penal Law § 130.35 [3]; see People v Vicaretti, 54 AD2d 236 [4th Dept 1976]). The class A-II felony of predatory sexual assault against a child, carrying a minimum sentence of 10 years to life and a maximum sentence of 25 years to life (Penal Law § 130.96) where the victim is less than 13 years of age and the actor is 18 years old or more, is identical to the class B felony of rape in the first degree, carrying a minimum determinate sentence of 5 years and a maximum of 25 years (Penal Law § 130.35 [4]; People v LaPage, 25 Misc 3d 890 [St. Lawrence County Ct 2009]; see People v Greene, 57 AD3d 1004, 1004 [2d Dept 2008] [prosecutor has broad discretion in deciding what crimes to charge and a defendant’s equal protection rights are not violated merely because criminal statutes are “overlapping”]).
Neither is this a case where charging the defendant with conspiracy in the second degree would be an abuse of prosecutorial discretion under the existing sentencing structure. The defendant participated in an ongoing, multidefendant conspiracy to possess and sell narcotics. Although for the most part these *236 sales were “street level” amounts, the sales made by the conspirators, as demonstrated by the wiretap evidence in the case, involved multiple sellers, operating virtually around-the-clock, taking telephone orders from many, many customers.
As noted, the defendant could be sentenced under existing law to an indeterminate class B felony sentence for conspiracy in the second degree if he had engaged in this conspiracy after the effective date of the 2004 DLRA. Therefore, it would be neither logical nor fair to similarly situated defendants, convicted of drug conspiracies committed after the effective date of the 2004 DLRA, to adopt the defendant’s equal protection argument and judicially construe the 2009 DLRA to allow for resentencing defendants convicted of drug conspiracies only because the conspiracy took place before the effective date of the 2004 DLRA.
Therefore, this court finds that it has not been shown beyond a reasonable doubt that the defendant’s right to equal protection of the laws has been violated by the Legislature’s failure to make the class B felony of conspiracy in the second degree involving drugs eligible for resentencing under the 2009 DLRA, even though convictions for class B felonies involving drugs under Penal Law articles 220 and 221 are so eligible. Because this prison sentence was lawfully imposed and has not been shown to be otherwise unlawful, this court has no power to change it after it has commenced. (CPL 430.10.)
Conclusion
Accordingly, for the reasons stated herein, this court finds that on the conviction for criminal possession of a controlled substance in the third degree the defendant is offered a new determinate sentence of seven years with two years’ PRS to run concurrently with his previously imposed sentence of 6 to 18 years on the conspiracy conviction and that his motion to be resentenced on the conspiracy conviction is denied, because that conviction is not eligible for resentencing consideration.