# THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BENJAMIN R., Appellant.

Fourth Department, November 7, 1984

APPEARANCES OF COUNSEL

*Thomas H. Brandt* for appellant.

*Peter L. Broderick* (*Shavasp Hanesian* of counsel), for respondent.

**OPINION OF THE COURT**

GREEN, J.

Defendant appeals from a judgment of conviction entered upon a jury verdict which found him guilty of one count of sodomy in the first degree, one count of sodomy in the third degree, two counts of sexual abuse in the first degree, two counts of sexual abuse in the third degree and one count of endangering the welfare of a child. The victim of the crimes was defendant's 14-year-old stepdaughter.

According to the victim, her mother went to Tulsa, Oklahoma, for a Bible conference at the end of August, 1982 leaving her home with the defendant and her three stepsisters. She testified that on three occasions during this period defendant took her from her bed, put her on the floor on her stomach, took off his pants, placed his penis on her back and moved around. On three other occasions also during this period, defendant removed her nightclothes and touched her breasts and on one occasion defendant forced her to place her mouth on his penis. The victim testified that after her mother returned home, defendant on two or three occasions again engaged in similar sexual conduct. She stated that she resisted defendant "all the time" and that defendant would often slap and punch her

and twist her arm or pull her hair. She also testified that defendant had punished her physically in the past and that she had seen the defendant hit her mother.

The victim stated she did not tell her mother about these incidents because she feared that her mother would suffer physically and mentally, as she had before. During a visit to her aunt in October, 1982, however, she did reveal what had occurred. In November, 1982, during a discussion at which the victim, her mother, defendant and some friends of the family were present, Mrs. R. asked her if the things she had told her aunt were true and she replied that they were. Shortly thereafter, she was removed from the home by the Social Services Department.

The victim's mother testified that she was away at the Bible conference from approximately July 25 until August 3, 1982. She corroborated her daughter's testimony concerning the discussion in their home in November. Mrs. R. also stated that during a conversation with defendant while he was in jail on a prior unrelated charge, defendant said "he didn't do it three times." When asked by the prosecutor "did he ever tell you that it was a matter of the flesh with regard to [the victim]," she replied, "Yes." The trial court denied defendant's motion for a mistrial but promptly instructed the jury to strike the question and answer from their minds.

The prosecutor offered into evidence a letter written by the defendant to his stepdaughter while defendant was in jail. The prosecutor contended that it was written to intimidate her and discourage her from testifying. The trial court initially denied admission of the letter but later admitted it after a proper chain of custody was established. The letter was then read to the jury. Essentially, defendant wrote that he would plead guilty if promised a sentence of no more than one year in jail. Defendant also stated that he wanted to save his stepdaughter the embarrassment of testifying at trial and that if forced to testify, she could remain silent.

■ Defendant's first contention on this appeal is that the indictment was defective because it failed to specify the dates of the alleged crimes. Five of the seven counts of the indictment for which defendant was convicted (one count of

sodomy in the first degree and two counts each of sodomy in the third degree and sexual abuse in the third degree) dealt with acts that allegedly occurred within a two-week period; one count (sexual abuse in the third degree) dealt with an act that occurred during a one-month period and the remaining count (endangering the welfare of a child) with acts that occurred during a five-month period. In response to defendant's demand for the exact dates on which these acts occurred, the People replied that those dates were unknown. Defendant submits these circumstances warrant reversal and dismissal of the indictment (see CPL 200.50, subd 6; *People v Faux,* 99 AD2d 654). We disagree.

Subsequent to this court's decision in *People v Faux* (*supra*) the Court of Appeals held that "[a]n indictment will not be dismissed as defective under CPL 200.50 with respect to the time period alleged for the commission of a crime, if it or, in some instances, the bill of particulars provides a reasonable approximation, under the circumstances of the individual case, of the date or dates involved" (*People v Morris,* 61 NY2d 290, 292). In *Morris,* defendant was indicted for rape and sodomy "during the month of November 1980." The People responded to defendant's demand for a bill of particulars only by narrowing the times to "on or about and between Friday, November 7, 1980 and Saturday, November 30, 1980." The court found no statutory impediment to the indictment because it contained a "designated period of time" in which the crimes allegedly occurred and because the statute does not require that the exact date and time be stated (CPL 200.50, subd 6). The court found no constitutional impediment to the indictment because it was "reasonably precise under the circumstances, notwithstanding that the crimes were alleged to have been committed within a 24-day period" (*People v Morris, supra,* p 292). We think the same reasoning applies here.

In the present case, as in *People v Morris* (*supra*) the victim alleged that several sex crimes occurred over a designated period in the home where both the victim and the defendant resided. Here, as there, the dates are not substantive elements of the crime (see *United States v*

*Antonelli,* 439 F2d 1068) and there has been no allegation or showing of bad faith by the People in failing to particularize the dates of the alleged crimes. Defendant was not inhibited in preparing an alibi defense because he was residing in the family home until November, 1982, a month after the sodomy and sexual abuse allegedly occurred. Moreover, it is important to note that the core of the defense at trial was not that the alleged crimes never occurred, but only that there was no forcible compulsion. Under these circumstances, we conclude that the indictment was reasonably precise.

Defendant's reliance upon *People v Faux* (99 AD2d 654, *supra*) is misplaced. We did not intend there to establish a blanket rule that an indictment must be dismissed where, as in the instant case, the People failed to supply a bill of particulars. While a bill of particulars may be of assistance "in some instances" (*People v Morris,* 61 NY2d 290, 292, *supra*), an indictment may be reasonably precise notwithstanding the absence of a bill of particulars so long as the indictment sets forth a reasonable and designated period of time (see CPL 200.50, subd 6) which we find to be the case here. We also note that a significant reason for reversing defendant's conviction in *People v Faux* (*supra*) was the confusing and erroneous manner in which the trial court charged representative counts to the jury, a claim not raised by defendant in the instant case.

Defendant's second contention is that the indictment was defective because it charged him with more than one offense per count (CPL 200.30, subd 1). This claim was neither specifically raised by the defendant nor ruled upon by the lower court. We find the claim lacking in merit in any event because on its face, each count of the indictment alleges only one sexual offense within a designated period of time.

Defendant's third contention is addressed to the convictions for sodomy in the first degree (Penal Law, § 130.50, subd 1) and sexual abuse in the first degree (Penal Law, § 130.65, subd 1). He argues that the People failed to prove forcible compulsion because there was no evidence that defendant placed his stepdaughter in fear of death or serious physical injury (see Penal Law, § 130.00,

subd 8; § 10.00, subd 10). The record belies this contention. Proof of actual physical injury is not required (see *People v Kaminski,* 87 AD2d 724, 725, mod on other grounds 58 NY2d 886). The victim testified that when she repeatedly refused defendant's sexual advances, defendant would grab her neck, punch her and throw her on the floor. Defendant also pulled her hair and twisted her arm leaving red marks that lasted for a few days. She testified that defendant had physically punished her prior to the acts alleged in the indictment and that she had also witnessed defendant hitting her mother. The victim also stated that once defendant discovered that she had told her aunt about the sexual abuse, defendant told her he was going to put her in the hospital. Under these circumstances and given defendant's obvious superiority over her in size and strength, defendant's application of force at the outset of the sexual encounters was sufficient to support the inference of a continuous threat of serious physical injury thereafter if she did not submit to the sexual acts (see *People v Beam,* 83 AD2d 82, 83, affd 57 NY2d 241, 250; *People v Randall,* 86 AD2d 918, 919; *People v Vicaretti,* 54 AD2d 236, 241).

■ Defendant next contends that the trial court erred in admitting portions of the testimony of Sister Noreen McCarrick, Linda Gibbons and Marsha Buhl. We find no abuse of discretion in allowing the testimony of Sister McCarrick or Ms. Gibbons because it was relevant on the issue of why defendant and the victim eventually left the residence where the criminal sexual acts allegedly occurred. Sister McCarrick testified only that defendant told her he recognized his need for counseling and planned to remove himself from the house and retreat to a hunting cabin. Ms. Gibbons testified only that after she received a phone call from Sister McCarrick she made arrangements to remove the victim from the home. Neither party testified to what they believed or inferred from defendant's conduct, but only what defendant said and what they did thereafter.

■ The People presented Marsha Buhl as an expert in the area of sexual abuse to explain why a victim is often reluctant to reveal the crime, particularly when the acts are committed in a family setting. Defendant objected on

the grounds that she was not qualified as an expert and even if she were, her testimony was irrelevant and constituted impermissible bolstering of the victim's testimony. Although the Trial Judge initially misstated that the question of whether Ms. Buhl was an expert was for the jury, he immediately thereafter correctly stated that the jury was to consider only the weight to be given her testimony. The trial court, therefore, implicitly recognized Ms. Buhl as an expert in allowing her testimony and, given her education and experience in the field, we cannot say the ruling was in error. Given the fact that defense counsel repeatedly questioned the victim on cross-examination about why she did not reveal earlier the alleged sexual abuse, Ms. Buhl's testimony was properly received to assist the jury in determining what effect should be given the victim's failure to make earlier disclosures (*People v O'Sullivan,* 104 NY 481, 489-490). Moreover, our examination of the record fails to support any inference or speculation that Ms. Buhl's testimony had the effect of bolstering the victim's version of the events.

Defendant also contends that Ms. Buhl's expert testimony was improper because it involved a subject of common knowledge not beyond the ken of the ordinary juror. We disagree. Crimes involving sexual abuse, particularly when committed in a family setting, are complex because they often involve young victims who are unable or unwilling to articulate the sordid details of the criminal acts. The victims may suffer a wide range of emotional reactions resulting from the violence and breach of family trust. The average juror does not have a general awareness of a young victim's reaction to sodomy or sexual abuse (see *Selkowitz v County of Nassau,* 45 NY2d 97, 102). The jury in this case was confronted with issues where Ms. Buhl's specialized knowledge was helpful in arriving at an intelligent determination (see *De Long v County of Erie,* 60 NY2d 296, 307-308; *People v Siu Wah Tse,* 91 AD2d 350, 353). Moreover, her testimony was of a general nature based upon her own experience in dealing with over 50 victims of sexual abuse (see *Kulak v Nationwide Mut. Ins. Co,* 40 NY2d 140). The defendant of course was free to impeach the People's expert or to offer a different opinion through his own qualified

witnesses. We also note that various courts have been receptive to testimony on similar psychological phenomena not easily understood by the ordinary juror (see, e.g., *People v Henson,* 33 NY2d 63 ["battered child syndrome"]; *People v Fisher,* 73 AD2d 886, affd 53 NY2d 907, 909 ["phenomenon of 'repression'"]; *People v Reid,* 123 Misc 2d 1084 ["rape trauma syndrome"]; *Hawthorne v State,* 408 S2d 801, 805-807 [Fla] ["battered woman syndrome"]; see, also, Proposed Code of Evidence for the State of NY, NY Law Rev Comm, 1980 Special Pamph, art VII).

■ Defendant next contends it was error to admit his letter to the victim in which he offered to plead guilty and suggested that she could remain silent. Defendant claims the letter should have been excluded because it was prejudicial and because the People did not disclose their intention to use it prior to trial. While we agree that the People breached their continuing duty of disclosure (see CPL 240.40, subd [1], par [a]; 240.60), preclusion is not always required, particularly where, as here, defendant as the author of the letter could not claim surprise or prejudice (see *People v Brown,* 104 Misc 2d 157, 164). In any event, if there was error, it was of a nonconstitutional nature and, therefore, harmless given the overwhelming evidence of defendant's guilt based upon the testimony of the victim and Mrs. R. and defendant's admissions to Mrs. R. and Sister McCarrick (see *People v Johnson,* 57 NY2d 969, 970; *People v Crimmins,* 36 NY2d 230, 241-242).

We have considered defendant's remaining contentions and find that none requires reversal. Accordingly, the judgment of conviction should be affirmed.

DILLON, P. J., O'DONNELL, MOULE and SCHNEPP, JJ., concur.

Judgment unanimously affirmed.