(February 7, 1989)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICARDO ROMERO, Appellant.—Judgment of the Supreme Court, Bronx County (Murray Koenig, J.), rendered September 19, 1985, convicting defendant, after trial by jury, of rape in the second degree and sexual abuse in the first degree and sentencing him to two concurrent terms of 2⅓ to 7 years to run consecutively to a sentence of 18 years to life previously imposed on a murder conviction, is unanimously reversed, on the law, the facts, and as a matter of discretion in the interest of justice, and the second and fifth counts of the indictment dismissed, with leave to the People to re-present the charges to another Grand Jury.

Defendant was convicted on the second and fifth counts of an indictment. The second count charged the defendant with "the crime of rape in the second degree committed as follows: The defendant on or about and between July 1, 1980 and

November 27, 1980, in the County of the Bronx, being a male Eighteen years old and more, engaged in sexual intercourse with Katherine Cruz, a female less than fourteen years old."

The fifth count of the indictment charged the defendant with "the crime of sexual abuse in the first degree committed as follows: The defendant on or about and between July 1, 1980 and November 27, 1980, in the County of the Bronx, subjected Katherine Cruz to sexual contact by touching vagina and breasts by means of forcible compulsion."

In response to defendant's demand for a bill of particulars, the People submitted the following information: Asked to state the exact time, date and place the defendant allegedly committed the crimes charged, the People affirmed that "[t]he incidents charged occurred on a regular basis between July 1, 1980 and November 27, 1980 * * * at 860 Fairmont Place, Apt. 1-A, Bronx, New York."

In response to a request for specific acts allegedly attributable to the defendant under each and every count of the indictment, the People stated in an affirmation: "On the first night, defendant entered the complainant's room while she was sleeping and put his penis in her vagina. When she tried to get up, defendant pushed her down, ordering her to stay down. She obeyed him because she was afraid he would hit her. He also touched her breasts. The following night, defendant again entered the complainant's room, and put his penis in her vagina. When she tried to get up, he ordered her to stay down. Then he put his finger into her vagina and she could not get away. Defendant would return more than once a week and place his penis in her vagina * * * touch her breasts, put his penis into complainant's anus, and masturbated in front of her. Each of these actions occurred on more than one of defendant's nocturnal visits. He told the youngster that if she told her mother he would hit her hard."

Complainant, 16 years old at the time of trial, testified on direct that, during the "Summer of 1980", appellant subjected her to vaginal and anal intercourse "more than once". In the beginning, complainant stated that she would wake up in the morning and find her clothes removed. After a 1980 Thanksgiving trip to Philadelphia, complainant was touched by appellant "feeling all over [her] body", particularly "the chest and vagina". Complainant's crying as a result of the post-Thanksgiving incident prompted her mother to inquire and learn of the foregoing described events.

On cross-examination, complainant stated that she could not

recall when appellant first had intercourse with her but she was able to recollect that appellant eventually forced her to submit to both anal and vaginal intercourse approximately three times a week.

Lisa Cruz, complainant's sister, who was eight years old during the summer of 1980, testified that she roomed with the complainant and observed appellant on several occasions climb into complainant's bed, "feel on" complainant and "open up his pants and take out his penis, and put it into my sister".

There was other testimony from complaint's mother Yolanda Ortiz, and Doctor Dorry Hankin.

The defense presented no evidence and moved to dismiss each of the counts in the indictment, but not on the grounds raised here for the first time.

However, the indictment denied appellant adequate notice as to the number of offenses which would be alleged under each count at trial and also failed to reasonably set forth the time of occurrence of each offense. Since we find that this lack of notice effectively deprived defendant of a fair trial under the circumstances present here, we reverse these counts in the interest of justice (see, CPL 470.15 [6]).

The five-month time period contained in the indictment was so unreasonably long under the circumstances as to deprive defendant of his constitutional right to be informed of the nature and cause of the accusation against him (see, CPL 200.50 [6]).

Since time is not a substantive or essential element in a rape or sodomy charge, a determination as to whether the time specified is sufficiently specific must be made on an ad hoc basis by considering all relevant circumstances (see, People v Keindl, 68 NY2d 410, 419). Significant factors to consider in evaluating the reasonableness of the time frame specified in the indictment are "the knowledge that the People have or should have of the exact dates of the crime, the age and intelligence of the victim and other witnesses, the surrounding circumstances and the nature of the offense, including whether it is likely to occur at a specific time or is likely to be discovered immediately." (People v Beauchamp, 143 AD2d 13, 15, citing People v Keindl, supra, at 419; see also, People v Morris, 61 NY2d 290, 295-296.)

The court, in Keindl (supra, at 420), noted that children "between [the ages of] 8 and 13 years old" at the time of the offenses should be capable of discerning, "if not exact dates, at

least seasons, school holidays, birthdays, or other events which could establish a frame of reference to assist them in narrowing the time spans alleged". A specified time period of approximately two months has been upheld in cases involving an 11- and a 12-year-old victim of sexual offenses. *(See, People v Jones,* 133 AD2d 972; *People v Benjamin R.,* 103 AD2d 663 [periods from two weeks to five months with 14-year-old complainant]; *compare, People v Keindl,* 68 NY2d, *supra,* at 419 [designated 10-, 12- and 16-month time periods unreasonable where complainants 8, 9 and 11 years of age].)

The instant five-month time period given for both the single count of rape in the second degree and the one count of sexual abuse in the second degree is unreasonable and unfair given the attending circumstances in this case. Thus, the District Attorney's own affirmation specifically stated that appellant subjected complainant to sexual intercourse and sexual contact on the "first night" (July 1, 1980) and the "following night". Although complainant later testified at trial that she could not recall the exact dates of specific sexual offenses, she was able to distinguish events based on whether school was in session, and to relate events to holidays such as Thanksgiving. Likewise, the prosecutor in her opening was able to relate the first two nights mentioned in the response to the demand for a bill of particulars to playing a game named "monster" in the summer time. She was also able to specify events that allegedly occurred in November 1980.

In sum, since "[r]easonableness and fairness demand that the indictment state the date and time of the offense to the best of the People's knowledge", in view of the unique circumstances presented here, the five-month period alleged is unreasonable *(People v Morris, supra,* at 296). The evidence demonstrates that the People were in possession of specific information which could have reasonably limited the designated time period on the two counts of which defendant was convicted.

In addition, both counts two and five are duplicitous. CPL 200.30 (1) provides: "Each count of an indictment may charge one offense only." CPL 200.50 (3) reinforces this requirement by mandating that "[a]n indictment must contain * * * [a] separate accusation or count addressed to each offense charged, if there be more than one".

Counts two and five, on their face, are in compliance with the CPL requirements that only one offense be alleged in each count. However, the District Attorney's affirmation *(supra)* and complainant's trial testimony alleged that both rape and sexual abuse occurred on more than one occasion during the

five-month period designated in the indictment. Since each offense involving rape or sexual abuse is viewed as a separate, distinct offense and not as a "continuing" crime *(see, People v Keindl, supra,* at 420),* each act alleged must be included under a separate count in the indictment and proven individually. "The prohibition against duplicity furthers not only the functions of notice to a defendant and of assurance against double jeopardy, but also ensures the reliability of the unanimous verdict. If two or more offenses are alleged in one count, individual jurors might vote to convict a defendant of that count on the basis of different offenses; the defendant would thus stand convicted under that count even though the jury may never have reached a unanimous verdict as to any one of the offenses" *(People v Keindl, supra,* at 418).

Although counts two and five arguably complied with CPL 200.50, each count, in reality, encompassed more than one offense (as evidenced by the District Attorney's affirmation and the trial testimony) and both are, therefore, duplicitous *(see, People v MacAfee,* 76 AD2d 157, 160 [cited with approval in *People v Keindl, supra,* at 417-418]). Concur—Murphy, P. J., Carro, Asch, Rosenberger and Smith, JJ.