■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GOKARAN SINGH, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Calabretta, J.), rendered November 5, 1990, convicting him of rape in the third degree and endangering the welfare of a child (four counts), upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and a new trial is ordered.

The defendant was charged in a 32-count indictment with raping, sodomizing, sexually abusing, assaulting, and endangering the welfare of his minor daughter during the time period encompassing May 1985 to August 1988. Various counts in the indictment were dismissed at different stages of the proceedings, and 11 counts were finally submitted to the jury. The jury acquitted the defendant of six of those counts and convicted him of five counts: one count of rape in the third degree and four counts of endangering the welfare of a child. On appeal, the defendant takes issue with various evidentiary rulings made by the trial court. We find that a number of these rulings were erroneous and that, since the cumulative impact of these errors cannot be deemed harmless, we reverse and order a new trial.

The defendant contends that the trial court erred in allowing expert testimony with respect to post-traumatic stress syndrome exhibited by victims of child sexual abuse. It is settled that the admission of an expert witness's opinion is

proper "when it would help to clarify an issue calling for professional or technical knowledge, possessed by the expert and beyond the ken of the typical juror" *(De Long v County of Erie,* 60 NY2d 296, 307; *see also, People v Cronin,* 60 NY2d 430; *Dougherty v Milliken,* 163 NY 527). In cases dealing with child sexual abuse, the admission of expert testimony has been upheld because "despite the fact that childrearing and family life are familiar to the lay juror * * * the dynamics of sexually and physically abusive relationships within a family are not as familiar" *(People v Taylor,* 75 NY2d 277, 288). However, the reason why the testimony is offered will determine its helpfulness, its relevance, and its potential for prejudice *(see, People v Taylor, supra).* For example, expert testimony has been held to be admissible to explain why a rape victim may have been initially unwilling to disclose who her attacker was *(People v Taylor, supra),* or unwilling to admit that she had been raped *(People v Whitehead,* 142 AD2d 745), or to explain why a victim of child sexual abuse may often be reluctant to reveal the crime, particularly when the acts are committed in a family setting *(People v Benjamin R.,* 103 AD2d 663).

On the other hand, expert testimony concerning rape trauma syndrome, which concededly is a specific form of post-traumatic stress syndrome, is inadmissible when it inescapably bears solely on proving that a rape has occurred *(People v Banks,* 75 NY2d 277). Thus, while expert psychiatric evidence may be presented to explain how children who have been repeatedly sexually abused by their stepfather or father are likely to suffer psychologically *(People v Keindl,* 68 NY2d 410), it is improper for such evidence to be admitted solely to show that the alleged child sexual abuse victim was demonstrating behavior that was consistent with patterns of response exhibited by victims of proven child sexual abuse since "[t]he clear implication of such testimony would be that because the complainant exhibited these symptoms, it was more likely than not that she had been [sexually abused]" *(People v Banks,* 75 NY2d 277, 284, *supra).*

Applying the foregoing principles to the instant case, it is clear that the trial court properly admitted expert testimony to explain why the complainant delayed in reporting the sexual abuse *(see, People v Taylor, supra; People v Benjamin R., supra).*

However, the trial court erred when it allowed, over the defense counsel's objection, a social worker and psychotherapist, Agnes Wohl, to testify on the prosecution's direct case

that nightmares, flashbacks, and intrusive memories are symptoms of post-traumatic stress syndrome in child sexual abuse cases and that when she met the complainant, she noted that the latter was suffering from post-traumatic stress syndrome because the complainant stated that she had insomnia, difficulty sleeping, nightmares, depression and "intrusive memories", including memories about being sexually abused by her father (see, People v Story, 176 AD2d 1080). Moreover, Wohl was also allowed to testify, over the defense counsel's objection, that the complainant told her that the symptoms appeared after she left the defendant's house and that, in Wohl's experience, it was common for the above-mentioned symptoms of post-traumatic stress syndrome to appear after the victim has left the abuser. The prejudicial nature of such testimony becomes readily apparent when one considers that the one count of rape in the third degree of which the defendant was convicted alleged an incident that occurred just five or six months before the complainant left the defendant's house to live elsewhere.

In sum, Wohl's testimony, taken as a whole, was to the effect that the symptoms exhibited by the complainant, as well as the delayed onset of those symptoms, were consistent with patterns of response exhibited by proven child sexual abuse victims. Under the facts of this case, there was no reason to introduce this testimony, other than to prove that the alleged acts of child sexual abuse occurred (see, People v Banks, supra; see also, People v Bennett, 79 NY2d 464, 473; People v Knupp, 179 AD2d 1030).

We also find the admission of testimony concerning prior uncharged sexual abuse to be erroneous. While this claim was not preserved for appellate review (see, People v Udzinski, 146 AD2d 245), we find the error to be extremely prejudicial and, therefore, review the claim in the exercise of our interest of justice jurisdiction.

On the People's direct case, the complainant was permitted to testify that her father started to sexually abuse her in approximately 1980 when she was eight or nine years old. She testified that the sexual abuse continued thereafter and that in the eight-year period between 1980 and 1988, they had sexual intercourse on the average of once a week. The trial court computed this to be approximately 416 times. The complainant testified, however, that she had had sexual intercourse with her father "thousands" of times. Since the period covered by the indictment was May 1985 to August 1988, it was error to admit testimony concerning any sexual abuse

which might have occurred prior thereto *(see, People v Hudy,* 73 NY2d 40, 55; *see also, People v Lewis,* 69 NY2d 321; *People v Harris,* 150 AD2d 723; *People v Jackson,* 136 AD2d 866).

The error cannot be considered harmless in view of the fact that the testimony was pervasive, not "brief" as the People contend. Indeed, the People's emphasis at the trial was that the defendant abused his daughter for eight years, from 1980 to 1988.

The trial court committed a further error by admitting into evidence a letter which the defendant wrote to his daughter subsequent to the crimes charged in the indictment. The letter did not contain evidence of any impropriety committed by the defendant at any time, nor was it relevant to any issue in the case. The trial court admitted the letter on the ground that it was relevant to the defendant's state of mind. However, the crimes charged in the indictment did not require proof of state of mind; and, even if they did, the defendant's state of mind at the time he wrote the letter could not be used to establish his state of mind at the time he allegedly committed the acts contained in the indictment *(see, People v Reynoso,* 73 NY2d 816). Since the prosecutor used the letter extensively during her cross-examination of the defendant as well as on summation, the error can hardly be considered harmless. In our view, the only purpose the letter served was to inflame the jury against the defendant.

Equally erroneous was the extent to which the trial court permitted the prosecutor to cross-examine the defendant concerning the viewing of a certain pornographic videotape. Contrary to the People's contention, the defense counsel did not open the door to such extensive cross-examination. On direct examination, the defense counsel had asked the defendant, "You've heard testimony that there was a pornographic video in the house at some period of time?", clearly referring to the complainant's testimony that some time between March 1 and March 31, 1988, she viewed a pornographic videotape with her father after which they had oral sex and sexual intercourse. The defendant testified that he had heard the testimony but denied that there was any pornographic videotape at the home during that period, although he did admit to watching a pornographic videotape after the complainant had left the house. Upon cross-examination, the prosecutor characterized the defendant's singular viewing of a pornographic videotape after the complainant left the house as "a recent fascination for porno movies" and then asked the defendant if he had seen various pornographic videotapes, naming the

titles, and asked the defendant to describe what he had seen in those videotapes. The cross-examination of the defendant continued extensively along these lines, over the persistent objections of the defense counsel. Even if it could be assumed that defense counsel opened the door to this area of inquiry on his direct examination, which he did not, it would still be clear that the cross-examination went far beyond the scope of the direct examination. Moreover, the cross-examination was not relevant to impeach the credibility of the defendant *(see, People v Schwartzman,* 24 NY2d 241, *cert denied* 396 US 846). Nor was it necessary to explain, clarify, or fully elicit any issue in the case *(see, People v Merlino,* 145 AD2d 654). The error cannot be deemed harmless when we consider that the prosecutor emphasized that issue during her summation, and that the single rape count of which the defendant was convicted had charged him with having sexual intercourse with the complainant between March 1, 1988, and March 31, 1988, around the time he allegedly viewed a pornographic videotape with her. Balletta, J. P., Copertino and Pizzuto, JJ., concur.

Miller, J., dissents and votes to affirm the judgment appealed from, with the following memorandum, in which Rosenblatt, J., concurs. I cannot agree with the conclusion reached by my colleagues in the majority as to the effect of the errors committed at the defendant's trial. The majority cites a litany of errors which, it finds, aggregated in an unfair trial. While I agree that the defendant received less than a perfect trial, I do not agree that he received an unfair trial. In my view the evidence adduced at trial overwhelmingly proved the defendant's guilt so that there was no significant probability that the errors cited by the majority affected the jury's verdict *(see, People v Crimmins,* 36 NY2d 230). Accordingly, I must respectfully dissent.

The majority begins its analysis of the fairness of the defendant's trial with a brief reference to the fact that the charges against the defendant stemmed from various crimes he perpetrated against his minor daughter. This statement, however, ignores the fact that the complainant was 19 years of age at the time she testified at the trial. The complainant proved to be a most credible and persuasive witness. She testified in candid and disturbing detail about the numerous occasions that her father subjected her to acts of rape, sodomy, and sexual abuse. She testified about the dynamics of her relationship with the defendant, explaining both how these crimes continued to be committed against her and why she did not act to protect herself at an earlier date. Most

critically, it was after she had fled from her father's household that the complainant first revealed the existence of a pattern of repeated incest that had perverted much of her childhood. She was not living with him at the time of her court appearances and there was no reason, either apparent or suggested to us, to support any motive she could possibly have had to fabricate these allegations. When she testified at trial, she no longer had cause to fear him, and her testimony was candid, forthright, and truthful. Crediting her testimony, and other evidence received at trial, the defendant's guilt was overwhelmingly established. Starting from this premise, the errors cited by the majority, to the extent that they do constitute errors, do not warrant the reversal of the defendant's conviction.

In my opinion, the most serious "error" cited by the majority concerned the introduction of evidence of uncharged crimes. As the majority correctly notes, the court permitted the People to elicit testimony from the complainant as to acts of sexual abuse perpetrated by the defendant pre-dating the earliest acts alleged in the indictment. As the majority also observes, however, the precise issue raised by the defendant on this appeal, that this evidence was intended to demonstrate his propensity to commit such crimes, is unpreserved for appellate review (see, CPL 470.05 [2]) as the defendant did not raise this issue before the trial court (see, People v Bynum, 70 NY2d 858). Exercising its interest of justice jurisdiction, the majority reaches out to remedy this perceived error. In my view, however, the introduction of this evidence of prior sexual abuse was not erroneous.

Evidence of uncharged crimes may not be received if it is intended to demonstrate that a defendant has a propensity to commit criminal acts generally or the same kinds of crimes of which he stands charged (People v Molineux, 168 NY 264). Furthermore, evidence of past incidents of sexual abuse committed by the defendant against his daughter may not be received to establish his "amorous design[s]" on his victim (People v Hudy, 73 NY2d 40, 55; People v Lewis, 69 NY2d 321), nor may it be received to enhance the complainant's credibility (People v Harris, 150 AD2d 723). However, in cases presenting alleged acts of sexual abuse perpetrated by a family member against another member of the household, evidence of similar previous episodes may be elicited to complete a complainant's narrative to assist the jury in its comprehension of a crime (see, People v Escobar, 131 AD2d 500). Moreover, in a case such as this, where the abuse has continued for a pro-

longed period without any previous attempt by the victim to seek aid or to even mention it in confidence to another, such evidence of past sexual abuse is relevant and admissible "as background material in order for the jury to understand the nature of the defendant's relationship with his [daughter]" *(People v Shorey,* 172 AD2d 634, 635; *People v Mendez,* 165 AD2d 751). In this case the familial dynamics of abuse and denial required the complainant's explanations that the defendant was a despotic father who was the absolute ruler of the family. Moreover, to explain the complainant's failure to cry out at an earlier date, it was essential that she be permitted to explain how the abuse: "started when I was a very little girl, and he led me to believe that I was supposed to be doing this. And, if I ever did state to him that I thought I shouldn't be doing this, he said that I was supposed to, he would fulfill all my needs. Once again, he made me feel very guilty, that I wasn't good enough for him, that I wasn't good enough, period". In light of the unusual family dynamics that were pervasive in the complainant's home, it was proper for the court to admit evidence of the past incidents of abuse to enable the jury to truly comprehend the defendant's dominance over the complainant and to understand how and why the crimes charged in the indictment were alleged to have actually been committed *(see, People v Steinberg,* 170 AD2d 50, *affd* 79 NY2d 673), and to explain her failure to cry out for help. Although the admission of this evidence of uncharged crimes was prejudicial, I find that the prejudice caused thereby was outweighed by the probativeness of the complainant's testimony and hence its admission was not improper.

The majority further finds that the defendant was deprived of a fair trial as a result of the court's improper admission of portions of the expert testimony of Agnes Wohl. The majority concludes that a limited portion of this witness's testimony impermissibly bolstered the complainant's allegations against her father. While I agree that the admission of this minimal testimony was improper, in light of the complainant's credible testimony and the overwhelming evidence of the defendant's guilt, I find that this error was harmless *(see, People v Crimmins, supra).* Simply stated, the admission of Wohl's inappropriate conclusions that the complainant exhibited certain symptoms that were typical of a victim of rape trauma syndrome, could not have influenced the jury's verdict after the jury heard the complainant's candid detailed accounts of how her father sexually abused her.

I do not agree that it was inappropriate for the court to

have admitted into evidence the letter the defendant wrote to his daughter following her departure from his household. This letter was relevant insofar as it revealed the defendant's state of mind, both at the time of his daughter's flight from his home and at times that he was actually subjecting her to abuse. Although the overall tenor of the letter was ostensibly conciliatory, the defendant repeatedly referred in this letter to his quick temper and to some of the communication problems that affected his relationship with his daughter, further underscoring the complainant's general account of their tumultuous relationship. While it was improper for the prosecutor to cross-examine the defendant in an inflammatory manner concerning his alleged viewing of X-rated videotapes, this error was not so egregious as to have compromised the defendant's right to a fair trial.

Accordingly, since the defendant's guilt was proven by overwhelming evidence and the jury's verdict rested upon this evidence and was not the result of any of the errors cited by the majority, I would affirm the judgment on appeal.