■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN T. SEAMAN, Appellant. [657 NYS2d 242] —Crew III, J. Appeal from a judgment of the County Court of Essex County (Jung, J.), rendered June 10, 1996, upon a verdict convicting defendant of the crime of sodomy in the third degree.

On April 28, 1995 defendant, a 53-year-old male, was indicted and charged with one count of sodomy in the third degree. The charge stemmed from allegations made by a then 17-year-old boy that defendant had anally sodomized him in a hot tub at defendant's cabin in the Town of Minerva, Essex County, in January or February 1992. At trial, the People's case rested primarily on the testimony of the victim. Expert testimony was adduced concerning the "abused child syndrome", and a good deal of evidence was presented concerning the "sexual climate" at defendant's cabin, as well as at his home in the Town of Cornwall, Orange County. At the conclusion of the trial, defendant was found guilty as charged and sentenced to six months in jail and five years' probation.

Contrary to defendant's contention on this appeal, we do not find that the verdict was against the weight of the evidence. We are, however, constrained to reverse the judgment of conviction and remit this matter for a new trial because defendant was deprived of a fair trial by the improper admission of both lay and expert testimony.

It is axiomatic that evidence bearing on the "sexual climate" of a household is inadmissible where it does not tend to prove a material element of the crime charged and is introduced simply to demonstrate a predisposition to commit the subject offense (*see*, *People v Mercado*, 188 AD2d 941, 943). Here, the People introduced, *inter alia*, evidence of nudity at defendant's cabin, the availability of a *Playboy* magazine, which defendant's son and his friends were permitted to view, the presence of the books *Joy of Sex* and *Freedom of Women's Pleasure* at defen-

dant's residence, as well as the fact that defendant's son and his friends were permitted to go "skinny dipping" in defendant's swimming pool. Such evidence bore no relationship whatsoever to the crime charged and could only have been aimed at convincing the jury of defendant's sexual proclivity. Such testimony was clearly prejudicial and can hardly be considered harmless inasmuch as the determination of guilt or innocence rested primarily on a determination of the respective credibility of defendant and the victim (*see, People v Viloria*, 160 AD2d 499).

It is now well established that expert testimony concerning "abused child syndrome" may be admitted to explain a victim's behavior that might otherwise appear unusual to the average jury (*see, People v Taylor*, 75 NY2d 277, 288). For example, expert testimony has been permitted to explain why a victim did not promptly complain (*see, People v Bennett*, 169 AD2d 369, 374, *affd* 79 NY2d 464), why a victim was unwilling to admit that she had been raped (*see, People v Whitehead*, 142 AD2d 745, 746) or why a victim may be reluctant to reveal the crime (*see, People v Benjamin R.*, 103 AD2d 663, 668-669). However, expert testimony is inadmissible when it inescapably bears solely upon proving that the crime charged occurred (*see, People v Banks*, 75 NY2d 277).

While the expert's testimony in the case at bar concededly was admitted to explain the victim's failure to promptly report the incident, a clearly proper purpose, much of the testimony was elicited for the unmistakable purpose of demonstrating that the victim had been sodomized. Indeed, at one point the People's expert, Paul Etu, testified that "any one of these [behavioral changes of the victim] might not be indicative of sexual abuse * * * but looking at the pattern they all fit somebody that has been sexually traumatized". Any lingering doubt as to the purpose of such testimony is removed when one looks at the statement of the prosecutor on summation, where she asserted, "So you heard about all those [behavioral] changes * * * from Dr. Etu * * *. Every one of those things are the kind of things you would expect to see. That's what he told you."

In spite of the clear error regarding the expert's testimony, the People assert that the issue is unpreserved for review because defendant failed to object. We disagree. During testimony of the victim's father concerning certain behavioral changes of the victim, counsel for defendant registered an objection following which there was a conference in chambers. At that conference counsel asserted, *inter alia*: "[In *People v*

*Taylor* (75 NY2d 277, *supra*)], the Court of Appeals * * * said that evidence of [r]ape [t]rauma [s]yndrome is inadmissible when it inescapably bears solely on proving, in this instance, a rape occurred here. * * * [The victim's father] is reciting * * * testimony for the purposes of [—] I guess, dignifying the testimony of Dr. Etu. So this is offered as part and parcel of the [r]ape [t]rauma [s]yndrome testimony, * * * not to explain the actions of [the victim] * * * but for the prohibited purpose which is to prove the occurrence of the event complained of." County Court, in response to that objection stated, "I don't find that to be the case."

In our view, while counsel's objection was tardy in that it came after the direct examination of Etu, counsel nevertheless made it clear that he viewed Etu's testimony as objectionable, as well as that of the lay witnesses who were testifying to facts that supported the hypothetical questions put to Etu, and it is equally clear that County Court rejected his objection and request for a mistrial on that ground. In any event, even assuming that the People are correct that defendant did not interpose a timely and/or properly enunciated objection to the complained of testimony, this clearly is the kind of case where we are called upon to entertain the cited error in the interest of justice (*see, People v McGill*, 47 AD2d 961, 962; CPL 470.15 [6] [a]). As alluded to previously, because resolution of this case rested almost entirely on a determination of the respective credibility of defendant and the victim, the enormous prejudice generated by this testimony mandates a reversal. In light of this conclusion, we need not address the remaining issues raised by defendant.

Mikoll, J. P., Mercure and Yesawich Jr., JJ., concur.

Peters, J. (concurring in part and dissenting in part). While I agree with my colleagues that the jury verdict convicting defendant of the crime of sodomy in the third degree was not against the weight of the evidence, I disagree with their conclusion that defendant was deprived of a fair trial by the improper admission of lay and expert testimony.

Defendant contends, and my colleagues agree, that he was denied a fair trial by the erroneous admission of sexual climate evidence. At trial, defendant, an attorney himself, was represented by counsel of his choosing. In the opening statement, counsel for defendant told the jury about his client. He described him as, *inter alia*, "a good guy", "a well-respected lawyer", "a public official" and "a pillar of the volunteer fire department". He stated that defendant "was generally regarded to be one of the finest people who lived * * * [in

Mountainville]". He further told the jury that he was "a very devoted, very devoted family man", always available to help children fix their broken bikes and put his children on the school bus. Finally, he told them that "as the children got older * * * [he] provided them with things to do. He would take his children and * * * [their] friends up to a cabin in Minerva, New York. The cabin was used for different kinds of weekends. Some were devoted exclusively to skiing, and some were mens' weekends."

The victim testified extensively and was subjected to vigorous cross-examination. During his direct testimony, he was questioned, without objection, about the activities and routines engaged in by the boys who visited the cabin. He testified specifically about the availability of beer and cigars, the nude hot tub activities in which defendant participated, magazines and movies they were permitted to view and a light switch which depicted a man with his pants down—the switch being the man's penis. Since none of this testimony describing the environment in which the alleged sodomy occurred was objected to, any error now raised concerning its admission is not properly preserved for our review (see, CPL 470.05; People v Nuccie, 57 NY2d 818). Had it been properly preserved, I would still disagree that such evidence was introduced solely to demonstrate that defendant was predisposed to committing the offense. Rather, given the prestidigitation of counsel to create the seemingly impeccable moral character of this defendant, I find the admission of evidence describing the climate of this rural cabin to which these young boys were taken to be entirely proper (see, People v Wynn, 208 AD2d 576, 577, lv denied 85 NY2d 916; People v Klos, 190 AD2d 754, 755-756, lv denied 81 NY2d 972).

As to the expert testimony of Paul Etu, characterized by the majority as being "elicited for the unmistakable purpose of demonstrating that the victim had been sodomized", not only do I disagree with their determination of its purpose, I also find their determination to exercise their interest of justice jurisdiction in this situation (CPL 470.15 [6]) wholly inappropriate. The record reveals that Etu made it quite clear that he had never examined this victim and that he had no opinion as to whether this victim had ever been sexually abused. His testimony concerning behavioral changes which might occur when a person has been sexually abused was relevant to the issues before this jury and appropriately "limited to explain[ ] behavior that might appear unusual to a lay juror" (People v Archer, 232 AD2d 820, 821; see, People v Taylor, 75 NY2d 277,

288; *People v Shay*, 210 AD2d 735, 735-736, *lv denied* 85 NY2d 980; *People v Singh*, 186 AD2d 285, 285-286).

I must further note the failure of defendant, once again, to make any objection during Etu's direct testimony. Waiting until the following day of trial, counsel first raised the issue, in chambers, before conducting his cross-examination. While defendant contends that this action is sufficient to preserve the issue for review, I disagree (*see, People v Nuccie*, 57 NY2d 818; *People v Southwick*, 232 AD2d 755, 756, *lv denied* 89 NY2d 930) and find no basis to now exercise our review powers (*see, People v Naranjo*, 194 AD2d 747, *lv denied* 82 NY2d 900). Notably, even in defendant's motion to set aside the verdict, this alleged error was not raised (*see*, CPL 330.30 [1]).

Finally, unlike the majority, I believe that the jury properly assessed the credibility of both defendant and the victim, with no substantial prejudice causing this verdict. Mindful of the "[g]reat deference * * * accorded to the fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor" (*People v Bleakley*, 69 NY2d 490, 495), this jury chose to credit the testimony of the 14-year-old victim, who admitted that his conduct both at home and at school was less than angelic, over that of the "well-respected" attorney-defendant.

I agree that defendant may have received less than a perfect trial, but a perfect trial is not what our system of justice guarantees. While "this court has * * * an interest in seeing that justice is done * * * [and] a duty to correct injustices presented" (*People v Bourne*, 139 AD2d 210, 215, *lv denied* 72 NY2d 955), I find no error which should cause us to exercise our interest of justice jurisdiction and go so far as to reverse this conviction.

For the foregoing reasons, I believe that defendant's conviction of the crime of sodomy in the third degree should be affirmed.

Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Essex County for a new trial.